587 A.2d 1119

**CONSUMERS LIFE INSURANCE COMPANY**

v.

**Patricia Ann SMITH.**

**No. 756, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

April 1, 1991.

Ruth Atkinson Lusby (Blades & Rosenfeld, P.A., on the brief), Baltimore, for appellant.

James R. Barrett (Margolis, Pritzker & Epstein, P.A., on the brief), Towson, for appellee.

Argued before ALPERT, CATHELL and DAVIS, JJ.

DAVIS, Judge.

Consumers Life Ins. Co. (Consumers) appeals from the judgment of the Circuit Court for Baltimore County granting a motion for summary judgment filed by the plaintiff below, Patricia Ann Smith, appellee. Smith filed suit against Consumers to recover $10,000 accidental death and dismemberment benefits payable under a group policy insuring the life of her husband, Joseph M. Smith. The Court denied Consumer's motion for summary judgment and granted summary judgment in favor of Smith. In this appeal, we are asked to interpret in a group insurance policy the term "accidental bodily injury" and determine whether it includes injury occurring while the insured is

engaged in proscribed behavior, *i.e.*, driving while legally intoxicated.

## FACTS

On November 9, 1986, Joseph Smith was killed in a single car accident when the car he was driving left the roadway, struck a telephone pole and overturned. The police investigation revealed that the decedent's vehicle was travelling in excess of 60 miles per hour when it left the roadway. The post mortem examination further revealed that the decedent had a .20 percent blood alcohol concentration, indicating that he had been operating his vehicle while intoxicated.[1]

The decedent was insured under a Group Term Life Insurance and Group Accidental Death and Dismemberment Insurance Policy with Consumers Life Insurance Co. This insurance policy provides for death benefits and double indemnity benefits in the event of "an accidental, bodily injury which results directly and independently of all other causes" and not from any of the excepted risks, *i.e.*, suicide, intentionally self-inflicted injury, infection or disease, and war. Consumers paid the $10,000 death benefits but, because the decedent's death occurred during the operation of his motor vehicle while intoxicated, Consumers denied payment of the accidental death benefit on the ground that the death was not accidental within the terms of the policy.

## I.

## SUMMARY JUDGMENT

We are asked to determine whether the appellant, by refusing payment of certain benefits, breached its contract with the insured. The standard for appellate review of the grant of a motion for summary judgment is whether the

---

**1.** If at the time of testing, the alcohol blood level is .10 percent or more, it is *prima facie* evidence that the person was intoxicated. Md.Cts. & Jud.Proc.Code Ann. § 10–307(e).

trial court erroneously granted summary judgment where there exists a genuine issue as to material facts in which case the movant is not entitled to judgment as a matter of law. Md.Rule 2–501(a). The function of the summary judgment procedure is "merely to determine whether there is an issue of fact to be tried, and, if there is none, to cause judgment to be rendered accordingly." *Porter v. General Boiler Casing Co.,* 284 Md. 402, 413, 396 A.2d 1090 (1979). Moreover, all duly shown facts which would be admissible in evidence and all reasonable inferences deducible therefrom must be considered most favorably to the party opposing the motion. *Washington Homes, Inc. v. Interstate Land Dev. Co.,* 281 Md. 712, 718, 382 A.2d 555 (1978).

The evidence regarding the insured's death is undisputed. The insured died as a result of an automobile accident when he operated his vehicle while intoxicated and collided with a utility pole. "Where there is no real dispute as to facts which are pertinent to the question of coverage which are shown by evidence properly admissible the construction is for the court." *Truck Insurance Exchange v. Marks Rentals,* 288 Md. 428, 433, 418 A.2d 1187 (1980). The record in this case presents no real dispute as to the facts which are pertinent to the question of coverage. Therefore, the "question is one of the construction of the contract in the light of the language employed in the contract, the subject matter and the surrounding circumstances. When these are clear, it is the province of the court, rather than of the jury, to construe the contract." *Ebert v. Millers Fire Ins. Co.,* 220 Md. 602, 610, 155 A.2d 484 (1959). The Court of Appeals has observed that

[t]he jury's function in the interpretation of documents then will arise wherever, in view of the surrounding circumstances and usages offered in evidence, the meaning of the writing is not so clear as to preclude doubt by a reasonable man of its meaning. If the meaning after taking the parol evidence, if any, into account is so clear that no reasonable man could reach more than one conclusion as to the meaning of the writing under the circum-

stances, the court will properly decide the question of fact for itself as it may any question of fact which is equally clear.

*Montauk Corp. v. Seeds,* 215 Md. 491, 497, 138 A.2d 907 (1958), quoting S. Williston, 4 *A Treatise on the Law of Contracts* § 616 at 660–63 (3d ed. 1957).

█ In order to see whether there existed a dispute as to material facts, we must determine first whether the terms of the contract are ambiguous. If the terms are unambiguous, we may construe the insurance contract as a matter of law. *Winterwerp v. Allstate Ins. Co.,* 277 Md. 714, 717, 357 A.2d 350 (1976).

The pertinent clause in the case *sub judice* reads:

Upon receipt by the Insurance Company of due proof that an Employee while insured under the policy has received *an accidental bodily injury, which results directly and independently of all other causes,* and as a result of the injury, has suffered any of the following losses after the date on which the injury was received, and that the loss suffered by the Employee *did not result from any of the Risks Excepted,* the Insurance Company will pay the amount of the benefit provided for the loss suffered ...

RISKS EXCEPTED: The insurance provided by the policy does not cover, and no payment will be made for, any loss which results directly or indirectly from: (1) *suicide or intentional self-inflicted injury* while sane; (2) *infection* ... or *disease;* (3) war, declared or undeclared, or any act of war. (Emphasis added).

█ Several well-established principles govern the construction of insurance contracts in Maryland. *Pacific Indemnity Co. v. Interstate Fire & Casualty Co.,* 302 Md. 383, 388, 488 A.2d 486 (1985). In an insurance contract, as in any other contract, the intention of the parties is determined primarily by the terms of the contract. To ascertain the parties' intention, the instrument must be considered as a whole. *Id.* The Court of Appeals opined that "language which is merely general in nature or imprecisely defined is

not necessarily ambiguous." *Truck Ins.*, 288 Md. at 433, 418 A.2d 1187. On the subject of ambiguity G.J. Couch, 2 *Couch Cyclopedia of Insurance Law* (2d ed. 1959) states:

§ 15:84.—**Test in determining existence of ambiguity.** The test to be applied by the court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a *reasonably prudent person* applying for insurance would have understood them to mean. The criterion is ambiguity from the standpoint of a layman, not from that of a lawyer.

*Id.* at 416–18 (emphasis added). *See also, C & H Plumbing v. Employers Mutual Casualty Co.*, 264 Md. 510, 515, 287 A.2d 238 (1972). Applying this test we believe that the word "accident" is not ambiguous to a reasonably prudent person.

The Court of Appeals has consulted *Webster's Dictionary, Random House Dictionary,* or, less often, *Black's Law Dictionary* to determine the ordinary and accepted meaning of a word. *Pacific Indemnity*, 302 Md. at 388, 488 A.2d 486. *Webster's Third New International Dictionary* 11 (3d ed. unabr. 1986) defines "accident," as

an event or condition occurring by chance or arising from unknown or remote causes ... lack of intention or necessity ... an unforeseen unplanned event or condition ... usu. sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance or a combination of causes and producing unfortunate result....

*Black's Law Dictionary* 15 (6th ed. 1990) also defines "accident":

In its most commonly accepted meaning, or in its ordinary or popular sense, the word may be defined as meaning: a fortuitous circumstance, event, or happening ... an event which under the circumstances is unusual and unexpected by the person to whom it happens ... an unusual or unexpected result attending the operation or performance of a usual or necessary act or event ... any unexpected personal injury resulting from any unlooked for mishap

or occurrence ... an undesigned, a sudden and unexpected event ... *INSURANCE CONTRACT.* An accident within accident insurance policies is an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and *not expected by the person to whom it happens.* A more comprehensive term than 'negligence,' and in its common signification the word means unexpected happening without intention or design.... (Emphasis added).

In the instant policy, the term "accidental bodily injury" is further qualified by the clause, "which results directly and independently of all other causes." Since we need to construe the instrument as a whole, we must determine whether this qualification makes the term "accident" ambiguous to a reasonably prudent layperson; we hold that the qualifying language does not render the term ambiguous. *See Webster's Third New International Dictionary, supra.*

"That a term cannot be precisely defined so as to make clear its application in all varying factual situations does not mean that it is ambiguous." *Allstate v. Humphrey,* 246 Md. 492, 496, 229 A.2d 70 (1967). In interpreting the contractual terms "we have no right to relieve one of the parties from disadvantageous terms by process of interpretation nor may we make a new contract under guise of construction." *C & H Plumbing,* 264 Md. at 512, 287 A.2d 238. Moreover, enumerating specific excepted risks (suicide, intentionally self-inflicted injury, infection, disease and war) logically indicates appellant's intention to be limited to those exceptions.

The holding in *Winterwerp,* 277 Md. at 718, 357 A.2d 350, that there is "no hard and fast rule" for resolving whether certain language is ambiguous, is pertinent here. "Each case must, in the final analysis, stand or fall upon its own facts." *Id.*

## II.

## PUBLIC POLICY

■ Appellant asserts that, as a matter of public policy, the beneficiary should not recover because the Maryland Legislature has acted to deter a person who has consumed alcohol from driving on Maryland's highways. Md.Transp. Code Ann. § 21–902 (1977, 1987 Repl.Vol.). The Court of Appeals has held that "unless a statute, a regulation, or public policy is violated," the first principle of construction of insurance policies in Maryland is to apply the terms of the contract. *Pacific Indemnity*, 302 Md. at 388, 488 A.2d 486.

We find nothing in the enactments of the General Assembly relative to insurance to indicate that we are expected as a matter of public policy to deny recovery to a beneficiary of an accident insurance policy because the insured drove a vehicle while intoxicated. If insurance companies desire to avoid liability on such ground, they are free to insert a clause in their policies to that effect. Such a clause would be valid and binding. J.A. Appleman, 1B *Insurance Law and Practice* § 511 at 394–95 (rev. ed. 1981).

In *Freeman v. Crown Life Ins. Co.*, 580 S.W.2d 897, 899 (1979) the Court of Civil Appeals of Texas addressed the public policy issue:

The only evidence upon which appellee relies to rebut the presumption that Mr. Freeman's death was accidental is the stipulation that at the time of the collision he was driving while intoxicated. It is contended that because such an act is a criminal act inherently involving substantial risk of harm, serious bodily injury and death are the readily foreseeable consequences of such conduct and are therefore not accidental within the contemplation of the insurance policy.

The *Freeman* Court concluded, 580 S.W.2d at 901:

Upon public policy considerations, some courts have denied recovery of accidental death benefits where the insured was killed while in the commission of a serious

crime, on the grounds that such a recovery would allow one to profit from his own wrong and would encourage crime. See Annot., 43 A.L.R.3d 1120; 1125, Sec. 3. But the weight of authority and the trend of recent decisions is to allow an innocent beneficiary to recover unless the policy was obtained in contemplation of the illegal conduct. *Ibid*, Sec. 4, p. 1126, et seq. *See also Stats v. Mutual of Omaha Insurance Co., supra.* Such a result does not violate the policy consideration first stated, because the beneficiary has been guilty of no wrongdoing. The second consideration is not valid, for as observed in *Home State Life Ins. Co. v. Russell*, 175 Okl. 492, 53 P.2d 562 (1936), it is unrealistic, to say the least, to assume that any significant number of policy holders would go out and seek death in unlawful pursuits in order to mature their policies.

The logical extension of appellant's argument concerning putting into motion "a chain of events that are the natural and foreseeable consequences of the initial action" is that such a test could arguably be applied to the most hazardous or the most inane pursuits. In oral argument, appellant urged that it may be foreseeable—and, hence, not accidental—that one is injured or killed as a result of running a red light or stop sign, or driving a long distance conscious of his or her fatigue. It suggested that so long as proceeding through the red light or stop sign was intentional, the fact that the result was unintentional is of no moment. It makes the same argument with respect to one who intentionally starts to drive a long distance knowing that he or she is severely fatigued. This is simply too expansive an interpretation of the holdings in the authorities cited by appellant.

We hold, under the facts here extant, that the insurer is liable, notwithstanding that the insured may have been injured as a result of violating the law, "[since] it does not appear that the policy was obtained in contemplation of such violation and the danger consequent thereon." Appleman, *supra,* § 511 at 391. *See also Zurich General Acci-*

*dent & Liability Ins. Co., etc. v. Flickinger*, 33 F.2d 853, 855–56 (4th Cir.1929).

## III.

### ACCIDENTAL MEANS v. ACCIDENTAL RESULT

 Appellant next contends that, in deciding the case *sub judice*, this court must distinguish between "accidental means" and "accidental result", a distinction first recognized in Maryland in the case of *Life Insurance Co. v. Plummer*,[2] 181 Md. 140, 28 A.2d 856 (1942). Appellant asserts that the policy at issue "implicitly incorporates this aspect of Maryland law" requiring the decedent's beneficiary to establish that death was both unintentional and unforeseen.

Appellant relies on *Plummer*, and *Home Beneficial Life Insurance Co. v. Partain*, 205 Md. 60, 106 A.2d 79 (1954),[3] but the policy language differs from the language in the case before us. In both cases, the Court of Appeals found that the insurance was not against accidental death, but against death by accidental means, and denied recovery.

Adopting the distinction between accidental means and accidental result, the Court of Appeals in *Plummer* relied on *Landress v. Phoenix Mutual Life Insurance Co.*, 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934 (1934). The insurance policy in *Landress* allowed recovery if death should result "from bodily injuries effected directly and independently of

---

**2.** In *Plummer*, the insured died after his dentist administered a dose of anesthetic preliminary to performing the operation. The Court held there was no evidence to show that a mishap or mistake had occurred in the use of anesthetic and thus death had not been caused solely by "external, violent and accidental means." *Id.* at 144, 28 A.2d 856.

**3.** In *Partain*, the insured met his death during an altercation with another individual. During the scuffle, Partain was pushed backward, fell, and died from the impact of hitting his head on a stone. *Id.* at 64, 106 A.2d 79. The Court found that death was a foreseeable consequence of provoking a fight and denied recovery under the insurance policy.

all other causes through external, violent and accidental means." The Court of Appeals referred specifically to a portion of Justice Stone's opinion that highlights the importance of the words used in an insurance policy: "But it is not enough, to establish liability under these clauses, that the death or injury was accidental in the understanding of the average man ... for here the *carefully chosen words* defining liability distinguish between the result and the external means which produces it." *Plummer*, 181 Md. at 143, 28 A.2d 856 (emphasis added), quoting *Landress*, 291 U.S. at 495–96, 54 S.Ct. at 462. Justice Stone went on to conclude that a policy which includes the words accidental means "is not against an accidental result" and that "[t]he stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental." *Landress*, 291 U.S. at 496, 54 S.Ct. at 462.

We acknowledge that the language of the *Partain* and *Plummer* policies, "bodily injury effected solely by violent, external and accidental means," is similar to the language of the policy *sub judice;* it is not identical, however. The policy at issue here does not specifically state that injury or death must result from accidental "means."

The direct and proximate cause of death of the insured was an automobile accident; he did not die from intoxication. Moreover, no evidence was presented to the trial court in the instant case that the decedent intended to injure himself or commit suicide. The police and autopsy reports state that the decedent died in an "accident." The fact that the decedent ingested alcohol does not make his death intentional, planned, foreseen or expected.

In *Partain*, the Court of Appeals held that "[i]n this case there is no room for doubt that the death of the insured was not expected by either participant in the scuffle; and consequently the death itself was accidental." *Partain*, 205 Md. at 65, 106 A.2d 79. The Court of Appeals held in *Plummer* that "[i]t is beyond question that the death was accidental, for the term, 'accidental' means that which happens without

intention or design, and which is unexpected, unusual and unforeseen." *Plummer*, 181 Md. at 142, 28 A.2d 856, citing *United States Mutual Accident Assn. v. Barry*, 131 U.S. 100, 121, 9 S.Ct. 755, 762, 33 L.Ed. 60, 67 (1889). Moreover, while intoxication may be dangerous and expose the drinker to a risk, it does not bar recovery under an accidental life insurance provision. "Intentional, unnecessary exposure to risks, as well as the negligent creation of risks to one's own safety, may not prevent the result from being accidental." *Schwartz v. John Hancock Mutual Life Ins. Co.*, 96 N.J. Super. 520, 233 A.2d 416, 420 (1967).

The policy itself failed to specifically exclude from its coverage any injury or death caused by driving while intoxicated; such a provision would have eliminated appellant's grounds for this appeal.

The applicable policy provisions specifies in plain, unambiguous, easily understandable language that coverage exists for the type of accident in which the decedent was involved; therefore, we hold that the trial court properly granted summary judgment in favor of the appellee.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.