81 A.3d 397

**MONTGOMERY COUNTY, Maryland**

v.

**John DISTEL.**

**No. 22, Sept. Term, 2013.**

Court of Appeals of Maryland.

Dec. 19, 2013.

228

Patricia P. Via, Chief (Marc P. Hansen, County Attorney and Edward B. Lattner, Chief, Rockville, MD), on brief, for Petitioner.

Thomas Patrick Ryan (Amy Leete Leone, McCarthy Wilson, LLP, Rockville, MD; Martha Handman, Gaithersburg, MD), on brief, for Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, and WATTS, JJ.

WATTS, J.

This case arises from a dispute as to whether Montgomery County, Maryland ("the County"), Petitioner, a self-insured entity, may recover damages from Montgomery County Police Officer John Distel, ("Respondent"), for the costs of repairing a County-owned police patrol vehicle, which was damaged in a single-car collision while Respondent operated the vehicle under the influence of alcohol. Specifically, we must determine whether Maryland's compulsory motor vehicle insurance scheme permits a self-insurer, such as the County, to disclaim or exclude insurance coverage, in a self-insurance guarantee, where an individual causes a collision while driving under the influence of alcohol. For the below reasons, we answer the

question in the negative and, accordingly, affirm the judgment of the Circuit Court for Montgomery County.[1]

## BACKGROUND

### The County's Self–Insurance Policy and Guarantee

The County is a self-insured entity approved by the Motor Vehicle Administration ("the MVA"). For the period from February 1, 2008, to February 1, 2009, the County agreed to provide motor vehicle liability insurance for County-owned vehicles "commensurate with the provisions as set forth in Section 17–103, Transportation Article, Annotated Code of Maryland and COMAR 11.18.02." In an application for self-insurance, dated January 8, 2008, the County stated that it would provide coverage for the minimum mandatory limits for: (1) bodily injury liability; (2) uninsured motorist claims; and (3) property damage liability. The County submitted to the MVA a signed Guarantee ("the Guarantee"), which provided, in relevant part:

> This guarantee is limited to payment of valid claims arising from motor vehicle accidents resulting from use or operation of covered vehicles by persons authorized to use such vehicles and occurring within the scope of such authorization. Where the use of a County vehicle is prohibited by any applicable vehicle-use policy, coverage is excluded under this Guarantee for damage of any kind.

The County's self-insurance policy and Guarantee were approved by the MVA and were in effect at the time of the collision at issue.

### The Collective Bargaining Agreement

In 2008, at the time of the collision at issue, there was a Collective Bargaining Agreement ("the CBA") in effect between the County and the Fraternal Order of Police, Mont-

---

1. In light of our resolution of the question pertaining to the exclusion, we need not address the second issue raised by the County as to whether the collective bargaining agreement permits the County to seek damages against Respondent.

gomery County Lodge 35, Inc. ("the FOP").[2] Article 35 of the CBA, entitled "Vehicles," set forth the policies and regulations concerning personal patrol vehicles ("PPVs"). Relevant provisions of Article 35 include the following:

> *Section D. General.* Eligible officers participating in the program will be issued a police vehicle for on-duty and off-duty use subject to the regulations in this Article. All take home vehicles assigned to officers will be defined as personal patrol vehicles (PPVs). This policy pertains to all officers assigned PPVs[.]
>
> \* \* \*
>
> *Section G. Program Regulations.* The following regulations apply to all participating officers as well as those officers using PPVs on a temporary basis:
>
> \* \* \*
>
> 2. PPVs will not be operated within four (4) hours after the officer has ingested any amount of alcohol. PPVs will not be operated after the officer has ingested any drug that impairs his ability to operate the vehicle. No alcoholic beverages will be carried in the PPV except when they are seized as evidence or contraband.
>
> \* \* \*
>
> 7. The PPV will not be used to carry excessively large or heavy loads or objects which protrude from the trunk or windows, except when required in the performance of official duties.
>
> \* \* \*
>
> *Section H. PPV Operating Procedures*
>
> \* \* \*
>
> 5. All officers will use seat belts when operating or riding in County motor vehicles, except when an officer's duties necessitate frequent exiting from the vehicle (i.e., checking stores within the same shopping complex). . . .

---

**2.** The CBA was effective from July 1, 2007, through June 30, 2010.

## The Instant Case

On May 9, 2008, at approximately 1:25 a.m., Respondent was operating a PPV, while off-duty, and was involved in a single-vehicle collision, which damaged the PPV and resulted in financial loss to the County. At the time of the collision, Respondent was under the influence of alcohol.[3] Respondent was arrested, charged with multiple alcohol-related crimes, and pled guilty to driving under the influence of alcohol. Respondent received eighteen months of probation before judgment. The Montgomery County Police Department issued against Respondent administrative charges, which resulted in department-imposed penalties, including an eighty-hour suspension without pay[4] and the requirement that Respondent successfully complete a stress and alcohol intervention program. As a result of the collision, the PPV was damaged and the County had to pay a total of $8,797.05, including $8,522.05 in repairs and $275 for towing.

Shortly after the collision, through his union representative, Respondent filed a grievance against the County, seeking a determination that the CBA precluded the County from obtaining damages against him for the cost of repairs to the PPV. The grievance went to arbitration. The arbitrator decided that he could not determine whether the County was entitled to recover damages against Respondent, as the matter needed to be resolved through a civil action rather than an administrative action. The parties agreed that the arbitrator would retain jurisdiction, but that the County could seek a civil judgment against Respondent, and if the County succeeded, the FOP could seek to reopen arbitration to determine whether the CBA permitted the civil judgment.

On August 3, 2010, in the District Court of Maryland sitting in Montgomery County ("the district court"), the County filed a complaint against Respondent seeking to recover the cost of

---

3. Respondent's blood-alcohol concentration level was recorded as 0.18.

4. In accordance with the CBA, Respondent surrendered eighty hours of annual leave in lieu of the eighty-hour suspension without pay.

repairs to the PPV, and on October 14, 2010, the County filed an amended complaint in the district court, seeking the same relief.

On October 19, 2011, the district court conducted a one-day trial.[5] On November 4, 2011, the district court ruled that the County, as a self-insurer, was entitled to relief and could recover damages against Respondent based on the "exclusion/restriction" of coverage in the Guarantee. The district court granted judgment in favor of the County in the amount of $8,797.05, plus court costs in the amount of $78.

Respondent noted an appeal to the Circuit Court for Montgomery County ("the circuit court"). Following a hearing, the circuit court reversed the judgment of the district court and entered judgment in favor of Respondent, ruling from the bench, in pertinent part, as follows:

[T]he District Court erred in finding that this was a permissive use exclusion that permitted the County to proceed and subrogate its claim against [Respondent]. I do not find that this is a permissive use exclusion which would preclude [Respondent] from being protected against [a] claim by the County. That the extension of this would deny coverage of anyone who was injured by an operator of a County vehicle who's using and operating that County vehicle happened to be driving drunk at the time would exclude that. And that's clearly contrary to the applicable law and I do not find that this is a permissive use exclusion that allows the County to proceed or subrogate[e] against [Respondent].

---

5. At trial, the County took the position that it would have defended and indemnified Respondent had the collision involved a third party:

> As far as the insurance line is concerned there's no question that if in fact [Respondent] in this particular case had been involved in a two[-]car accident and [Respondent] had been sued. The County would certainly have defended the action of [Respondent] and provided for any liability judgment that would have been received by the third party.
>
> And I believe that, that's what the cases are that are cited by [Respondent]. There's no dispute about that.

Thereafter, the County filed with this Court a Petition for Writ of Certiorari, which we granted on March 22, 2013. *See Montgomery Cnty. v. Distil,* 430 Md. 644, 62 A.3d 730 (2013).[6]

## DISCUSSION

■ The County contends that it may recover damages from an employee where the employee operates a county-owned vehicle contrary to an applicable vehicle use policy. The County argues that the Guarantee: (1) provides coverage for claims arising from motor vehicle collisions resulting from "use or operation of a covered vehicle by a persons authorized to use such vehicle and occurring within the scope of such authorization"; and (2) excludes coverage where the use of the County vehicle is prohibited by any applicable vehicle use policy. The County asserts that the CBA contains the applicable vehicle use policy that excludes coverage where an officer operates a PPV after consuming alcohol. The County maintains that, because the MVA approved and accepted the Guarantee, with the restriction, coverage is excluded, and it is entitled to seek damages from Respondent, regardless of whether the restriction is authorized by the General Assembly or reduces insurance coverage below that required under Maryland's compulsory insurance statute.

Respondent replies that contractual restrictions or exclusions in automobile insurance policies that reduce insurance coverage below that required by Maryland's compulsory automobile insurance laws, and that are not expressly authorized as exceptions by the General Assembly, are invalid and unenforceable. Respondent contends that "Maryland law does not allow an insurer to exclude insurance coverage because the insured was driving under the influence"; *i.e.,* the General Assembly has not promulgated an exception to insurance coverage to exclude coverage for those driving under the influence of alcohol.

---

6. The caption of this Court's order granting *certiorari* misspells Respondent's name as "Distil."

Respondent contends that a self-insurer, such as the County, may not exclude coverage for its insured's operation of a vehicle while under the influence of alcohol, as such an exclusion would be against public policy. Moreover, Respondent asserts that the Guarantee's exclusion of coverage—stating that "the use of a County vehicle is prohibited by any applicable vehicle-use policy"—is too broad and neither specifically identifies the CBA, or any section of the CBA, as containing a vehicle use policy, nor specifically prohibits driving after consuming alcohol. Respondent maintains that the CBA sets forth in different sections many procedures that an officer is to follow, and that none of the sections is identified as a vehicle use policy.

In a reply brief, the County responds that the applicable vehicle use policy is contained at Section G of Article 35 of the CBA, which sets forth "the scope of the permitted use of a police vehicle[,]" and that the vehicle use policy does not include other sections such as Section H, "which designates certain procedures that the officer is to follow when he or she is operating a police vehicle within the scope of permission." (Footnote omitted).

In *Marwani v. Catering by Uptown,* 416 Md. 312, 318–19, 6 A.3d 928, 931 (2010), we explained the standard of review applicable in cases on appeal from the district court:

[We] will set aside the judgment of a court based on the factual finding of that court only when those findings are clearly erroneous. Maryland Rule 8–131(c). . . . The legal analysis of the District Court and of the Circuit Court, however, enjoy no deferential standard of appellate review. *Helinski v. Harford Memorial Hosp., Inc.,* 376 Md. 606, 614–15, 831 A.2d 40, 45 (2003). We review [without deference] their interpretations of the relevant statutes.

(Omission in original) (quoting *Friendly Fin. Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc.,* 378 Md. 337, 342–43, 835 A.2d 1197, 1200 (2003)).

As to the motor vehicle insurance scheme within the State of Maryland, we, in no uncertain terms, have stated:

Maryland is a compulsory motor vehicle insurance state. Since the enactment of Ch. 73 of the Acts of 1972, effective January 1, 1973, "the owner of a motor vehicle registered or required to be registered in Maryland must maintain a motor vehicle insurance policy on the vehicle, or self-insurance approved by the M.V.A. [Motor Vehicle Administration]."

*BGE Home Prods. & Servs., Inc. v. Owens,* 377 Md. 236, 239, 833 A.2d 8, 10 (2003) (alteration in original) (quoting *Van Horn v. Atl. Mut.,* 334 Md. 669, 680–81, 641 A.2d 195, 200 (1994)).[7] Under Md.Code Ann., Transp. (1977, 2012 Repl. Vol.) ("Transp.") § 17–107(a), "[a] person who knows or has reason to know that a motor vehicle is not covered by the required security[, *i.e.,* is uninsured,] may not: (1) Drive the vehicle; or (2) If he is an owner of the vehicle, knowingly permit another person to drive it."[8] In other words, it is against the law in Maryland to knowingly drive an uninsured vehicle, and the compulsory motor vehicle insurance scheme "remains an integral part of Maryland statutory law and public policy." *Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 311, 841 A.2d 858, 864 (2004).

Under the compulsory motor vehicle insurance scheme, the General Assembly treats "approved self-insurance as the equivalent of an insurance policy[.]" *BGE Home,* 377 Md. at 246–47, 833 A.2d at 14 (citation and internal quotation marks omitted). This Court has recognized and deferred to the General Assembly's intent on the matter:

"[W]e see no reason to distinguish a certificate of self-insurance from a motor vehicle liability insurance policy. Indeed, by making the minimum amounts of required coverage applicable to motor vehicle liability policies as well as to

---

7. "The required insurance attaches to automobiles, not to persons." *Edwards v. Mayor and City Council of Balt.,* 176 Md.App. 446, 466, 933 A.2d 495, 506 (2007) (citation and internal quotation marks omitted).

8. Although the collision at issue here occurred before issuance of the 2012 Replacement Volume, the substance of the above language remains the same.

all other forms of security, we think the legislature demonstrated a clear intent to treat all forms of insurance equally."

*Id.* at 247, 833 A.2d at 15 (alteration in original) (quoting *Hines v. Potomac Elec. Power Co.*, 305 Md. 369, 375, 504 A.2d 632, 635 (1986)).

■ The compulsory motor vehicle insurance scheme in Maryland is designed to provide coverage, or payment, for liability claims.[9] *See generally Enter. Leasing Co. v. Allstate Ins. Co.*, 341 Md. 541, 549, 671 A.2d 509, 514 (1996) ("The purpose of Maryland's compulsory insurance law is to ensure that those who own and operate motor vehicles registered in the State are 'financially able to pay compensation for damages resulting from motor vehicle accidents.' The public policy behind the law is to give innocent third parties a source of private sector insurance funds from which to obtain compensation for their injuries." (Citations omitted)); *Larimore v. Am. Ins. Co.*, 314 Md. 617, 618–19, 552 A.2d 889, 889 (1989) ("[T]here must be maintained on every motor vehicle required to be registered in Maryland certain security, usually in the form of a motor vehicle liability insurance policy, which provides coverage for the payment of liability claims." (Citation omitted)).

---

9.
 Under Transp. § 17–103(b), a motor vehicle insurance policy or self-insurance policy must satisfy the following minimum levels:
 (1) The payment of claims for bodily injury or death arising from an accident of up to $30,000 for any one person and up to $60,000 for any two or more persons, in addition to interest and costs;
 (2) The payment of claims for property of others damaged or destroyed in an accident of up to $15,000, in addition to interest and costs;
 (3) Unless waived, the benefits described under § 19–505 of the Insurance Article as to basic required primary coverage;
 (4) The benefits required under § 19–509 of the Insurance Article as to required additional coverage; and
 (5) For vehicles subject to the provisions of § 25–111.1 of this article, the security requirements adopted under 49 C.F.R., Part 387.

In *Salamon*, 379 Md. at 310, 841 A.2d at 864, we observed that, in enacting and establishing a compulsory motor vehicle insurance scheme, the General Assembly set forth a legislative policy that "has the overall remedial purpose of protecting the public by assuring that operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents." (Citation and internal quotation marks omitted). Stated otherwise, the compulsory motor vehicle insurance scheme was enacted "to promote the established legislative policy in Maryland that seeks to assure that victims of automobile accidents have a guaranteed avenue of financial redress." *Rentals Unlimited, Inc. v. Aetna Cas. & Sur. Ins. Co.*, 101 Md.App. 652, 660, 647 A.2d 1278, 1282 (1994) (citation omitted), *cert. denied*, 337 Md. 90, 651 A.2d 854 (1995).

In accordance with the compulsory motor vehicle insurance scheme, the Montgomery County Code enables the County to obtain "comprehensive auto liability" insurance either from an insurance company authorized to do business within the State or through a self-insurance program. Montgomery County Code, Chapter 20, Article VII, Insurance § 20–37(c). The purpose of such a policy is "to provide an adequate comprehensive insurance program to compensate for injury to persons or damage to property resulting from negligence or other wrongful acts of the county's public officials, employees and agents and to provide protection for property of the county and for officials, employees, and agents acting within the scope of their duties." *Id.* § 20–37(a). Concerning self-insurance, the Montgomery County Code provides: "Insurance protection furnished to the participating agencies by the Montgomery County self-insurance program will not be less than the coverage provided under the independent insurance programs of the participating agencies when they begin to receive coverage from the fund." *Id.* § 20–37(e)(3).

As a result of Maryland's compulsory motor vehicle insurance scheme, we have held, on numerous occasions, that "contractual exclusions in automobile insurance policies that excuse or reduce benefits below the minimum statutorily

required levels or types of coverage, and are not expressly authorized by the General Assembly, are invalid." *Salamon*, 379 Md. at 303, 841 A.2d at 860; *see also Van Horn*, 334 Md. at 686, 641 A.2d at 203 ("In accordance with the legislative design that there be insurance policy coverage for automobile accident injuries, this Court has generally held invalid insurance policy limitations, exclusions and exceptions to the statutorily required coverages which were not expressly authorized by the Legislature. Attempts by insurance companies, purporting to exercise contract rights, to avoid the public policy of compulsory motor vehicle insurance with mandated coverages, have repeatedly been rejected by this Court." (Citations omitted)); *Jennings v. Gov't Emps. Ins. Co.*, 302 Md. 352, 356, 488 A.2d 166, 168 (1985) ("It is settled that a clause in an insurance policy, which is contrary to 'the public policy of this State, as set forth in ... the Insurance Code' or other statute, is invalid and unenforceable." (Citations omitted) (omission in original)).

In *Salamon*, 379 Md. at 303–04, 841 A.2d at 860, this Court held that a "pizza exclusion" clause contained in a personal automobile insurance policy, which "purport[ed] to allow the insurer to deny coverage if an insured driver was [using the insured vehicle to] deliver[ ] 'property for compensation' at the time of the accident," was invalid, as it was not authorized expressly under Maryland's compulsory motor vehicle insurance scheme. The insured driver (and owner of the insured vehicle) was using his vehicle to deliver pizzas as part of his job when he was involved in an accident with another vehicle. *Id.* at 303–04, 841 A.2d at 860. At the time of the accident, the insured driver had a personal automobile insurance policy that contained a "pizza exclusion" clause, under which the insurer's duty to defend and coverage for damage to a vehicle did not apply where the vehicle was being used to carry "property for compensation ... including delivery of ... food[.]" *Id.* at 304–05, 841 A.2d at 860–61.

In reviewing the validity of the "pizza exclusion" clause, we stated that we "consistently ha[ve] declared invalid insurance policy exclusions that excuse or reduce the insured parties'

coverage below the statutory minimum level where such exclusions are not authorized explicitly by the General Assembly." *Id.* at 311, 841 A.2d at 865. Conversely, where the General Assembly has "authorized exclusions or exemptions, we [have] upheld contractual terms that excused or reduced an insurer's minimum coverage below the statutory minimums." *Id.* at 313, 841 A.2d at 866. As to the insured driver's case and the "pizza exclusion" clause, we explained and held as follows:

> [The insurer] argues that it is entitled to deny [the insured driver] coverage because, at the time of his accident, he was delivering food for compensation in violation of the terms of the insurance contract. Because [the insurer] seeks to deny all coverage to [the insured driver], rendering him uninsured for the accident, the exclusion reduces coverage below the statutory minimum levels.
>
> The "pizza exclusion" has not been authorized by the General Assembly. [The insurer] has not pointed to any Maryland statute that either expressly or impliedly gives insurers the authority to add such an exclusion to their insurance contracts, and thereby to reduce or eliminate benefits below the statutory minimum levels. Upon review of title 17 of the Transportation Article and title 19 of the Insurance Article of the Maryland Code, we too are unable to find any such provision. Accordingly, [the insurer]'s commercial use exclusion in [the insured driver]'s policy is invalid.

*Id.* at 316–17, 841 A.2d at 868 (footnote omitted). *See also Jennings,* 302 Md. at 354, 359–60, 488 A.2d at 167, 169–70 (We held that the "household exclusion" clause of an automobile liability insurance policy, which purported to permit an insurer to disclaim all coverage for bodily injury to an insured or an insured's family member residing in the insured's household, was invalid because it excluded "a large category of claimants" in contravention of the compulsory minimum coverages and in the absence of express approval by the General Assembly.). *But see Stearman v. State Farm Mut. Auto. Ins. Co.,* 381 Md. 436, 438, 440, 849 A.2d 539, 541–42 (2004) (We held that "a household exclusion that reduce[d] the limit of liability in an

auto insurance policy to the statutory minimum amount," where "that policy otherwise provide[d] liability coverage in excess of the statutory minimum liability limits[,]" was valid because the exclusion did not attempt to exclude coverage below the statutory minimums.).

In *BGE Home,* 377 Md. at 245, 833 A.2d at 14, we held that BGE Home, a self-insured employer, had a duty to defend its employee in a third-party suit and that "the absence of a permissive use[ ] clause in the self-insurance documents precluded BGE [Home] from disclaiming indemnity coverage on the ground that [the employee] was not driving the vehicle within the scope of permission." A BGE employee caused a collision with another vehicle while driving a BGE Home van to his home after consuming alcohol. *Id.* at 240–41, 833 A.2d at 11. At the time of the collision, BGE Home had a directive "prohibit[ing] any employee from operating a BGE [Home] vehicle if the employee had consumed any alcohol or illegal substances." *Id.* at 239, 833 A.2d at 10. BGE Home had a self-insurance policy and guarantee in effect, which the MVA had accepted. *Id.* at 239–40, 833 A.2d at 10. Significantly, however, neither the self-insurance application nor guarantee contained a permissive use clause or "any exclusions, restrictions, definitions, or limitations other than the monetary limitations for the coverages[.]" *Id.* at 240, 833 A.2d at 10.

We held that BGE Home, as a self-insurer, had a duty to defend because "[a]n insurer's duty to defend, while contractual, is nevertheless a fundamental feature of a basic liability insurance policy." *Id.* at 245–46, 833 A.2d at 14. "[W]e decline[d] to find by implication exclusions, restrictions, or limitations which the self-insurer failed to put in the self-insurance application" and "which [were] not mentioned in the self-insurance documents." *Id.* at 248, 250, 833 A.2d at 15, 16. Most importantly, we stated that even when such exclusions and restrictions on required coverages are expressly stated in an insurance policy, "most of these exclusions and restrictions [are] void if they were not specifically authorized by the" General Assembly. *Id.* at 248, 833 A.2d at 15 (citations omitted). Accordingly, we observed:

It would be an extreme anomaly to hold that express exclusions in a motor vehicle insurance policy, not specifically authorized by the Legislature, are generally invalid, but that a purported exclusion from self-insurance coverage, neither set forth in the self-insurance documents nor specifically authorized by the Legislature, is nevertheless recognized and valid.

*Id.* at 249, 833 A.2d at 16. *See also Edwards v. Mayor and City Council of Balt.*, 176 Md.App. 446, 451, 474, 455, 933 A.2d 495, 498, 511, 500 (2007) (In reviewing Baltimore City's liability "as the self-insurer of [an] 'at-fault' vehicle[,]" the Court of Special Appeals concluded that the City was liable where a fire department employee caused a collision in a City-owned vehicle while driving his children home from school, and neither the City's self-insurance application nor the guarantee in effect at the time contained a permissive use clause.).

Here, to begin, we state in no uncertain terms that we neither approve of nor condone Respondent driving under the influence of alcohol. Nonetheless, we agree that the County may not recover the cost of repairs from Respondent; stated otherwise, we are satisfied that the Guarantee purporting to exclude coverage is unenforceable.

The County effectively failed to include the alcohol exclusion in the Guarantee. On their face and by their plain language, the County's self-insurance application and Guarantee contain nothing that purports to exclude coverage of an authorized individual who operates an insured vehicle after consuming alcohol or while under the influence of alcohol. Neither the self-insurance application nor the Guarantee mentions the word "alcohol" or contains an express provision disclaiming all insurance coverage in the event that an authorized individual operates the vehicle while under the influence of alcohol. Moreover, the language "any applicable vehicle-use policy" is overly broad, and fails to identify with any specificity which vehicle use policies apply or where the applicable vehicle use polices being referenced may be located. The County's self-insurance policy and Guarantee cover all County vehicles, not just PPVs used by police officers. As such, the "applicable

vehicle-use policy" could potentially refer to any number of different policies for different groups of County employees.

In particular, neither the Guarantee nor the self-insurance application specifically references or identifies the CBA, Article 35 of the CBA, or the regulation in Section G of Article 35 prohibiting driving within four hours of consuming alcohol as the vehicle use policy pertaining to police officers. And, equally troubling, nothing in the CBA or Article 35 of the CBA is explicitly termed a "vehicle-use policy." As such, a review of the Guarantee would not result in notice that it refers to the CBA, and a review of the CBA would not result in notice that Article 35, and specifically Section G, constitutes a "vehicle-use policy" to which the County refers in the Guarantee.

■ Nonetheless, the County contends that the applicable vehicle use policy is contained solely at Section G of Article 35 of the CBA, and does not include Section H. We find this contention to be nonsensical. Section G is entitled "Program Regulations," whereas Section H is entitled "PPV Operating Procedures." Both sections contain restrictions on the use and operation of PPVs. For example, item 2 of Section G provides: "PPVs will not be operated within four (4) hours after the officer has ingested any amount of alcohol." Item 5 of Section H provides: "All officers will use seat belts when operating or riding in County motor vehicles[.]" Both items refer to the operation of PPVs and are contained in Article 35 concerning "Vehicles." At oral argument, the County attempted to distinguish Section G from Section H, and maintained that not wearing a seat belt would not result in a lack of insurance coverage as would driving within four hours of consuming alcohol. As the Honorable Lynne A. Battaglia so aptly pointed out, however: "How would somebody who is a police officer . . . know which one of these things [Section G or Section H] that . . . he's operating under, which one will obviate the County's responsibility and which won't?" The simple answer is that a police officer would not know based on the plain language of the self-insurance application, Guaran-

tee, and CBA which actions would result in a disclaimer of all insurance coverage.[10] Case law is clear that "[i]f a self-insurer desires a particular exclusion or restriction, the self-insurer should put it in its application" or guarantee. *BGE Home*, 377 Md. at 250, 833 A.2d at 16. In the absence of any statement or indication whatsoever that the "applicable vehicle-use policy" could be found in the CBA and consisted specifically of the provisions of Section G of Article 35 of the CBA—and only the provisions of Section G—the County failed to effectively include the alcohol exclusion in the Guarantee.

Our inquiry does not end there. Given the gravity of the question, we address head-on the issue of whether the County may exclude coverage where an employee causes a collision after consuming alcohol, and conclude that such an exclusion is not valid under Maryland law.

Undeniably, the exclusion in the Guarantee violates Maryland's compulsory motor vehicle insurance scheme by reducing insurance coverage below the mandatory minimums (and, in fact, eliminating all coverage) in the absence of express approval by the General Assembly. In other words, because the County, as self-insurer, seeks to deny coverage to Respondent and essentially render him uninsured at the time of the collision, the exclusion reduces coverage below the statutory minimum levels in effect at the time of the collision. *See, e.g., Salamon*, 379 Md. at 311, 841 A.2d at 864 ("[T]he requirement that every driver maintain at least the[ ] minimum levels of motor vehicle insurance [pursuant to Transp. § 17–103] remains an integral part of Maryland statutory law and public

---

**10.** Another troubling matter, indeed, is whether the County would attempt to disclaim all coverage for any violation of any item contained within Section G of Article 35. For example, Item 7 of Section G provides that "[t]he PPV will not be used to carry excessively large or heavy loads or objects which protrude from the trunk or windows, except when required in the performance of official duties." Nothing within Section G defines what constitutes an "excessively large or heavy load[.]" Thus, a police officer would again be confronted with not knowing whether he or she is in violation of the regulation or under what circumstances the County would disclaim coverage under Item 7 of Section G.

policy."); *BGE Home*, 377 Md. at 238, 833 A.2d at 9–10 ("[T]he Maryland statutory provisions regulating motor vehicle insurance are comprehensive ... [and] mandate compulsory motor vehicle insurance or approved self-insurance[.]" (Citations omitted) (omission and second alteration in original)).

Moreover, an exclusion of coverage for driving while under the influence, or driving within four hours of consuming alcohol, has not been expressly authorized by the General Assembly. The County has not identified

> any Maryland statute that either expressly or impliedly gives insurers the authority to add such an exclusion to their insurance contracts, and thereby reduce or eliminate benefits below the statutory minimum levels. Upon review of title 17 of the Transportation Article and title 19 of the Insurance Article of the Maryland Code, we ... are unable to find any such provision.

*Salamon*, 379 Md. at 316–17, 841 A.2d at 868 (footnote omitted). Indeed, nothing within the applicable titles of the Maryland Code indicates an intent on the part of the General Assembly to permit insurers to deny or disclaim insurance coverage to otherwise insured individuals based on their blood-alcohol concentration level at the time of a collision. We know of no "drunk driving exclusion" [11] which would validate the exclusion in the instant case.[12]

---

**11.** Such a "drunk driving exclusion" seems to be contrary "to assur[ing] that victims of automobile accidents have a guaranteed avenue of financial redress." *Rentals Unlimited*, 101 Md.App. at 660, 647 A.2d at 1282 (citation omitted).

**12.** At oral argument, Respondent directed our attention for the first time to *Allstate Ins. Co. v. Sullivan*, 643 S.W.2d 21, 22 (Mo.Ct.App. 1982), in which the Missouri Court of Appeals held that a rental car company's insurance policy covered Sullivan for an accident involving another vehicle that occurred when he drove a rental car while intoxicated because: (1) his use of the vehicle was not prohibited by the rental agreement he signed; and (2) whether he operated the vehicle within the constraints set by the rental car company—*i.e.*, within the scope of permission granted—was not relevant under Missouri law.

Although not mandatory authority, *Sullivan, id.*, is instructive. The Missouri Court of Appeals demonstrated a wariness of restrictions or

The County's public policy arguments are unpersuasive. In its brief, the County argues that public policy interests concerning liability coverage are not implicated by exclusion of coverage under the circumstances presented in this case because "this case does not involve compensation for injured victims or third parties" or "for property damage of others." Yet, at oral argument, the County took the position that it would not have been required to defend and indemnify Respondent if a third party had been involved in the collision because Respondent "was operating outside the scope of the authority and permission" granted to him. The County acknowledged that, under such a circumstance, Respondent would have been rendered uninsured and would not have been entitled to insurance coverage.[13]

For obvious reasons, the County's position has troubling consequences. Maryland's compulsory motor vehicle insurance scheme has many purposes, including "assur[ing] that victims of automobile accidents have a guaranteed avenue of financial redress[,]" *Rentals Unlimited*, 101 Md.App. at 660, 647 A.2d at 1282 (citation omitted), and generally providing "coverage for the payment of liability claims." *Larimore*, 314

---

exclusions that reduce insurance coverage below the statutory minimum requirements. *See id.* at 23 (That Court cautioned that it must be cognizant "of the serious consequences of allowing restrictions in [a] rental agreement to determine the coverage to be provided. The liability protection for which the lessee has paid could be reduced to a nullity by rental provisions prohibiting operation of the car 'negligently' or contrary to any statute or ordinance."). Similarly, this Court has not hesitated to declare invalid exclusions in automobile insurance policies that permitted insurers to disclaim all coverage in the absence of express approval by the General Assembly. *See Salamon,* 379 Md. at 303–04, 841 A.2d at 860 ("pizza exclusion" clause); *Jennings,* 302 Md. at 354, 359–60, 488 A.2d at 167, 169–70 ("household exclusion" clause). In this case, aware of the far-reaching effects that approval of a "drunk driving exclusion"—one not specifically identified or delineated in the self-insurance application or Guarantee—would have in the absence of an exclusion approved by the General Assembly, we refuse to independently create such an exclusion.

13. This is in contrast to the position the County took before the district court. There, at trial, the County asserted that it would have defended and indemnified Respondent had the collision involved a third party.

Md. at 619, 552 A.2d at 889 (citation omitted). Although it is true that the instant case does not involve third-party injury, as revealed by the County's stated position at oral argument, the County would disclaim coverage even in those circumstances where a third party is involved—extending the exclusion from accidents involving only the County employee to accidents involving innocent third parties. Such a position directly conflicts with Maryland's compulsory motor vehicle insurance scheme and undermines the spirit and purpose of the insurance scheme, namely, "to give innocent third parties a source of private sector insurance funds from which to obtain compensation for their injuries." *Enter. Leasing Co.*, 341 Md. at 549, 671 A.2d at 514 (citations omitted). Were we to accept the County's position, we would essentially exclude a group of individuals from insurance coverage and leave innocent third parties without the ability to sue the insurer for redress and compensation for their injuries. We refuse to do so, as this would violate public policy. We reaffirm that restrictions, exclusions, or clauses "that excuse or reduce benefits below the minimum statutorily required levels or types of insurance, and are not expressly authorized by the General Assembly, are invalid[,]" *Salamon*, 379 Md. at 303, 841 A.2d at 860, as are any clauses that are against public policy. *See Jennings*, 302 Md. at 356, 488 A.2d at 168. The exclusion in the Guarantee at issue is invalid on both counts.[14]

---

14. In addition, at oral argument, the Honorable Sally D. Adkins asked the County whether it had provided any notice to Respondent that he would need to purchase additional private insurance in his own name to provide coverage were he to act outside of the scope of permission granted to him. Judge Adkins identified *N. Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 179 (Ind.2006), in which the Supreme Court of Indiana held that "a self-insured employer who furnishes its vehicle for use by an employee has a duty to inform its employee of the limits of the employer's statutory obligation to third parties and the employee's potential exposure for negligent operation of the vehicle." The Court concluded that "failure to perform this duty imposes an obligation to indemnify and defend the employee against liability arising out of the employee's permissive use of the employer's vehicle, and precludes the employer from asserting indemnity or subrogation rights against the employee." *Id.* In response to Judge Adkins's question, the County acknowledged that it did not notify Respondent "in any specific way"

We reject the County's argument that *BGE Home* stands for the proposition that a self-insured entity may include any exclusion or restriction it desires into a guarantee and the restriction shall be enforceable as long as it is included in the guarantee. In *BGE Home,* 377 Md. at 250, 833 A.2d at 16, we stated: "If a self-insurer desires a particular exclusion or restriction, the self-insurer should put it in its application. The exclusion or restriction will then have the same status as an exclusion or restriction in a motor vehicle insurance policy." Nothing in *BGE Home* supports the leap of logic that an exclusion in a guarantee that contravenes the compulsory motor vehicle insurance scheme is valid. Indeed, we recognized that "even when exclusions from or restrictions on required coverages are expressly set forth in a motor vehicle insurance policy, Maryland law generally deems most of these exclusions or restrictions void if they were not specifically authorized by the Legislature." *Id.* at 248, 833 A.2d at 15 (citations omitted). Thus, *BGE Home* does not save the exclusion at issue here.

We are likewise not persuaded by the County's reliance on *Consumers Life Ins. Co. v. Smith,* 86 Md.App. 570, 587 A.2d 1119, *cert. denied,* 323 Md. 185, 592 A.2d 178 (1991), a case involving a life insurance policy. In *Consumers Life Ins.,* 86 Md.App. at 572, 587 A.2d at 1120, the insured was killed in a single-car accident that occurred when he operated his vehicle while intoxicated. The insurer propounded a public policy argument—that a "beneficiary should not recover because the Maryland Legislature has acted to deter a person who has consumed alcohol from driving on Maryland's highways." *Id.* at 577, 587 A.2d at 1122 (citation omitted). In resolving the issue, the Court of Special Appeals stated:

that he would need to carry his own insurance. As such, under the County's construction and application of the self-insurance policy and Guarantee, Respondent was rendered uninsured and was not afforded an opportunity to obtain his own insurance policy to provide for the payment of liability claims. Such an application is clearly against public policy and violates the compulsory motor vehicle insurance scheme established by the General Assembly.

We find nothing in the enactments of the General Assembly relative to insurance to indicate that we are expected as a matter of public policy to deny recovery to a beneficiary of an accident insurance policy because the insured drove a vehicle while intoxicated. If insurance companies desire to avoid liability on such ground, they are free to insert a clause in their policies to that effect. Such a clause would be valid and binding.

*Id.* at 577, 587 A.2d at 1122–23 (citation omitted). Although the statement above may govern life insurance policies, and specifically accidental death and dismemberment policies, for one very critical reason, it has no bearing whatsoever on the instant case involving motor vehicle insurance. Unlike life insurance and attendant policies, motor vehicle insurance is mandatory under Maryland law. *See BGE Home,* 377 Md. at 239, 833 A.2d at 10. In other words, although an individual may or may not opt to purchase a life insurance policy, under Maryland's compulsory motor vehicle insurance scheme, an individual is **required** to purchase motor vehicle insurance for his or her vehicle meeting the statutory minimum coverages. Thus, the County's contention that *Consumers Life Ins.* is "dispositive of the issue" is without merit.

 Before concluding, we pause to explain that the clause in the Guarantee is, indeed, an "exclusion" rather than an omnibus clause or a permissive use clause. An omnibus clause is an overarching clause contained in an automobile insurance policy that "extends coverage to a third party who operates the vehicle within the permission of the named insured." *Salamon,* 379 Md. at 315, 841 A.2d at 867 (citation omitted). "[T]he dominant purpose of an omnibus clause is an intent to extend coverage." *Id.* at 315, 841 A.2d at 867 (citation and internal quotation marks omitted). "The purpose of an omnibus clause is to protect the named insured, the persons within the omnibus clause, and the public generally and its members injured by the negligent operation of the insured automobile on a public highway." *Agency Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 193 Md.App. 666, 673, 998 A.2d 936, 940 (2010) (citation and internal quotation marks

omitted). In *Agency Ins. Co., id.* at 673, 998 A.2d at 940, the Court of Special Appeals described the "objectives" served by an omnibus clause, including providing: (1) "the injured person a right to proceed against the insurer in cases in which the insurer would not otherwise be liable because the automobile was not driven by the original insured"; and (2) "the additional insured the protection of automobile liability insurance without his having procured such a policy[.]" (Citation omitted).

 A permissive use clause "limits the coverage under the omnibus clause to claims that arise while the third party is operating the vehicle within the scope of the permission granted by the named insured." *Salamon,* 379 Md. at 316 n. 10, 841 A.2d at 867 n. 10.[15] Permissive use clauses typically require that "the vehicle must be used for a purpose reasonably within the scope of the permission granted, within the time limits imposed or contemplated by the parties, and operated within geographical limits so contemplated." *Id.* at 316 n. 10, 841 A.2d at 867 n. 10 (citation omitted).[16]

---

**15.**

 We have described permissive use clauses in further detail as follows:

 A "scope of permission" or "permissive user" clause limits coverage under an omnibus clause to claims that arise while the third party is operating the vehicle within the scope of the permission granted by the named insured. When a vehicle is covered under the typical "scope of permission" clause,

 the vehicle must be used for a purpose reasonably within the scope of the permission granted, within the time limits imposed or contemplated by the parties, and operated within geographical limits so contemplated. . . . Of course, this does not mean that every immaterial deviation would automatically cut off the policy protection. It merely declares that such use must be reasonably within the intention of the parties at the time consent is given, or a use to which the insured would have consented had he known of it.

Omnibus clauses and "scope of permission" restrictions do not always contain the same language and should not all be interpreted in the same way.

*Salamon,* 379 Md. at 316 n. 10, 841 A.2d at 867 n. 10 (omission in original) (citation omitted).

**16.** In other words, although an omnibus clause "extends coverage to a third party who operates the vehicle with the permission of the named

■ In contrast, an exclusion in an automobile insurance policy excludes coverage under certain delineated circumstances. *See generally id.* at 304–05, 841 A.2d at 860–61. An exclusion typically utilizes the word "exclusion" or some variation thereof. *See, e.g., id.* at 304–05, 841 A.2d at 860–61; *Jennings,* 302 Md. at 354, 488 A.2d at 167.[17]

The clause of the Guarantee at issue—"Where the use of a County vehicle is prohibited by any applicable vehicle-use policy, coverage is excluded under this Guarantee for damage of any kind"—is an exclusion. The clause is certainly not an omnibus clause because it does not extend coverage to third parties, or otherwise evince an intent to extend coverage or to provide added protection for third parties. In fact, the clause does exactly the opposite—it limits or eradicates all coverage under certain circumstances. The clause is also not a permis-

---

insured[,]" a permissive use clause "limits [the] coverage under [the] omnibus clause to [situations where] the third party operates the vehicle within the scope of the permission granted by the named insured." *Salamon,* 379 Md. at 315, 316 n. 10, 841 A.2d at 867, 867 n. 10 (citations omitted).

17. In *Salamon,* 379 Md. at 315–16, 841 A.2d at 867–68, in determining that the "pizza exclusion" clause was invalid, we distinguished an omnibus clause in a motor vehicle insurance policy from an exclusion in a motor vehicle insurance policy, stating:

An omnibus clause in an automobile insurance policy extends coverage to a third party who operates the vehicle with the permission of the named insured. This Court has treated omnibus clauses differently with regard to the requirements of the compulsory insurance law, such as personal injury protection and uninsured motorist coverage, because the dominant purpose of an omnibus clause is "an intent to extend coverage." ... [W]e declined to follow the "liberal rule" of omnibus clause interpretation, which would have invalidated all "scope of permission" clauses. Instead, we held that that such clauses could be valid and, when they are, they should be interpreted in the same manner as any other term in an insurance contract. (Citations and footnotes omitted). The "liberal rule" of omnibus clause interpretation, referenced above, "require[d] that, if the vehicle was originally entrusted by the named insured ... to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated." *Id.* at 315 n. 9, 841 A.2d at 867 n. 9 (citation and paragraph break omitted).

sive use clause because it does not purport to limit coverage to claims arising when the third party operates the vehicle within the "scope" of permission granted or authorized. Rather, the immediate previous clause in the Guarantee contains permissive use language limiting coverage to "valid claims arising from motor vehicle accidents resulting from use or operation of covered vehicles by persons authorized to use such vehicles and occurring within the scope of such authorization." Tellingly, the clause at issue explicitly provides that "coverage is **excluded**" where "the use of a County vehicle is prohibited by any applicable vehicle-use policy[.]" (Emphasis added). As with the "pizza exclusion" and "household exclusion," the "vehicle-use policy exclusion," or more specifically as utilized in this case, the "drunk driving exclusion," excludes all coverage under certain circumstances. Accordingly, we have no difficulty in treating the clause at issue as an exclusion.

 In summary, we hold that the exclusion in the Guarantee-purportedly excluding or disclaiming all insurance coverage on the basis that Respondent operated his PPV under the influence of alcohol-is invalid because it violates Maryland's compulsory motor vehicle insurance scheme, is not expressly authorized by the General Assembly, and is against public policy.[18]

---

**18.** In his brief, Respondent contended that the circuit court properly determined that the County, as a self-insurer, may not subrogate against him because he was insured under the self-insurance policy and Guarantee even while operating the PPV after consuming alcohol. The County responded that subrogation is not at issue in the case because Respondent was not insured under the self-insurance policy; *i.e.*, because Respondent was not insured due to his violation of the vehicle use policy, the County is not suing itself to recover damages.

We agree with Respondent that it is well-settled that an insurer may not recover from its insured as subrogee. *See Rausch v. Allstate Ins. Co.*, 388 Md. 690, 701, 882 A.2d 801, 807 (2005). In light of our determination that the exclusion is invalid, and in the absence of any other reason advanced by the County as to why Respondent would be denied coverage under the self-insurance policy, we conclude that Respondent was, in fact, covered at the time of the collision. Accordingly, the County, as insurer, may not recover damages from Respondent, its insured, as doing so would violate the anti-subrogation rule.

JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED. PETITIONER TO PAY COSTS.

HARRELL, J., dissents.

HARRELL, J., dissenting.

I dissent. At the expense of legal scholarship,[1] I reject the Majority opinion's result as contrary to common sense (collective bargaining agreements aside, for the moment). I pose instead the rhetorical question—what sense is to be made by the average citizen-on-the-street of a complex and lawyerly explanation why what should be an unimplicated greater "good" (protection of compulsory motor vehicle insurance) excuses an inebriated off-duty policeman, who crashed his "loaned" patrol car while on a personal trip as a consequence, from being responsible to his employer (and the taxpayers) for the cost to repair the damaged vehicle? None, I submit. Therefore, in this case, I would reverse the judgment of the Circuit Court for Montgomery County and remand the case to it with direction to affirm the judgment of the District Court of Maryland, sitting in Montgomery County.

I agree with the Majority opinion that the County's permissive use exclusion in its approved self-insurance guarantee should not be enforceable as a defense available to the County to an innocent third party's, i.e., a victim's, claims (whether for personal injury or property damage), up to the mandatory minimum statutory coverage.[2] Majority op. at 247–48, 81 A.3d at 409–10. That, in my judgment, does not invalidate, howev-

---

1. Had I thought there to be a prayer that a more conventionally-expressed and erudite dissent (replete with citation of "legal" authorities and the deployment of reasoning based on those authorities) might draw enough of my colleagues to my view, I would have invested the time in that pursuit. With the benefit of knowing that such a prayer would not be answered, however, I default to a more economical, plain-spoken invocation of common sense merely to record my idiosyncratic views.

2. That, of course, is not the question or circumstance presented by this case.

er, the exclusion (which had been approved by the Motor Vehicle Administration) for all circumstances.

Through the combination of the permissive use exclusion [3] in the self-insurance guarantee and Section G, No. 2 of the collective bargaining agreement (prohibiting the operation of a personal police vehicle within four hours after an officer ingests alcohol),[4] Officer Distel should find himself outside the zone of coverage for his responsibility for damage to the County vehicle he alone caused through negligence and violating (in a meaningful way) the permissive use policy. He was neither a victim nor innocent. By the combination of the two provisions, Officer Distel's misconduct caused him to cease to be an insured, for purposes of the self-insurance guarantee, as to the County's claim against him in this case. That being said, I would not credit the County's argument had it sought to render Officer Distel an uninsured for violation of some of the less meaningful permitted use restrictions in the policy, especially where any such violation was not a proximate cause of the accident and resultant damages. What it comes down to (putting aside the keen legal analysis of the Majority opinion) is just common sense.

Like the Majority, but for different reasons, I would not reach the question of interpreting the collective bargaining agreement and, instead, leave it to the resumption of the arbitration of Officer Distel's grievance.

---

**3.** I agree with the Majority opinion that this is an "exclusion" and is not part of an omnibus clause or a permissive use clause. Maj. op. at 249–52, 81 A.3d at 411–13.

**4.** I disagree with the Majority opinion that the details of the use policy needed to be included in the self-insurance guarantee (Maj. op. at 242–43, 81 A.3d at 407). It was sufficient for the County to have referred in the exclusion language in the guarantee to "any applicable vehicle-use policy."