*David Payne, et ux v. Erie Insurance Exchange, et al.*
No. 38, September Term, 2014

**Automobile Liability Insurance – Omnibus Clause – Second Permittee.** An "omnibus clause" in an automobile insurance policy defines the individuals protected by the policy and may extend liability coverage to one who uses the insured vehicle with the permission of an individual who is a named insured in the policy. A person who receives such permission is referred to as a "first permittee." Coverage can also extend to another driver as a "second permittee" if that driver operates the vehicle within the scope of the permitted use and either (1) the first permittee is present in the automobile or (2) the second permittee otherwise operates the vehicle for the benefit of the first permittee. But coverage under the omnibus clause does not extend to that driver if the first permittee is not in the car and the driver deviates from the purpose for which the first permittee authorized the driver to operate the vehicle.

Circuit Court for Prince George's County
Case No. CAL11-34091
Argued: January 12, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 38

September Term, 2014

DAVID PAYNE, ET UX.

v.

ERIE INSURANCE EXCHANGE, ET AL.

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by McDonald, J.
Harrell, Battaglia, and Watts, JJ., concur.

Filed: March 30, 2015

Automobile insurance policies in Maryland cover persons named in the policy – the named insured – with respect to the vehicles identified in the policy. Coverage under a policy also can extend to some extent to other vehicles driven by the named insured and to other persons who drive the vehicles identified in the policy. The part of the policy that extends coverage to other persons is sometimes called the "omnibus clause." In particular, an omnibus clause may extend insurance coverage to drivers who use a vehicle with the permission of the named insured.

But what if the person with permission to use the car – the "first permittee" – enlists someone else to drive the car for the benefit of the first permittee? And what if that driver has previously been forbidden to drive the car by the named insured? Under what circumstances might an omnibus clause extend coverage to that driver as a "second permittee"?

Prior appellate decisions have identified alternative scenarios under which an omnibus clause covers the operation of the vehicle on behalf of, and for the benefit of, a first permittee by a driver other than the first permittee. We hold that the omnibus clause in the policy at issue in this case would extend coverage to a second permittee who drove the car for the benefit of the first permittee at her request, regardless of whether the first permittee happened to be physically in the car at that time. The omnibus clause did not extend coverage to that driver, however, when he operated the car for a purpose other than that requested by the first permittee.

**I**

**Background**

*Automobile Insurance – Omnibus Clauses*

Maryland's compulsory motor vehicle insurance law makes automobile liability insurance a prerequisite to the registration of a motor vehicle in Maryland. Maryland Code, Transportation Article, §§17-103, 17-104. The law is designed to ensure that "those who own and operate motor vehicles registered in the State are financially able to pay compensation for damages resulting from motor vehicle accidents." *Enterprise Leasing Co. v. Allstate Insurance Co.*, 341 Md. 541, 549, 671 A.2d 509 (1996) (citation and internal quotation marks omitted). The public policy underlying the law "is to give innocent third parties a source of private sector insurance funds from which to obtain compensation for their injuries." *Enterprise Leasing Co.*, 341 Md. at 548-49. While insurance is linked to the registration of a vehicle and the law thus may be characterized as "vehicle-based,"[1] policies typically provide coverage for specified individual drivers, sometimes referred to as the "named insured."

Liability coverage is extended to certain other drivers of the insured vehicle by virtue of a policy provision known as the "omnibus clause."[2] Although there is no statutory

---

[1] A. Janquitto, Maryland Motor Vehicle Insurance (3d ed. 2011), §2.8 at 38.

[2] Although the term "omnibus" derives from the dative plural of *omnis*, the Latin word for "all," an omnibus clause does not cover all potential drivers of the insured vehicle, as this case illustrates.

2

requirement that a policy include an omnibus clause, most policies contain one. A. Janquitto, Maryland Motor Vehicle Insurance (3d ed. 2011), §7.7 at 195. The clause usually extends coverage to designated categories of potential drivers of the insured vehicle, including family members and permissive users of the vehicle. *Id.* at 196. The extent to which a permissive user may authorize another individual to drive the vehicle and be covered by means of the omnibus clause of the policy has generated a number of reported appellate decisions. The facts of this case pose yet another factual scenario.

### *The Car, the Driver, and the Policy*

At the time of the accident in February 2008 giving rise to this case, Respondents Alan and Maureen Dwyer lived in Cheverly in Prince George's County. Also resident in their household was their 34-year old daughter, Karen Dwyer, and her three children. The Dwyers provided support for Karen, who was disabled as a result of lupus, and their grandchildren, two of whom attended a school a few blocks from their residence. At the time, Karen was in a relationship with the father of her children, Ameen R. Abdulkhalek.

Alan Dwyer owned a 1995 Subaru Legacy. Karen Dwyer was the primary driver and had unrestricted use of the vehicle. Mr. Dwyer, however, had forbidden Mr. Abdulkhalek to drive the car. The Subaru was insured by a policy in Mr. Dwyer's name with Respondent Erie Insurance Exchange ("Erie"). That policy included an omnibus clause in the section on liability coverage that read as follows:

3

**"Anyone we protect"** means:

1. **"you"** or any **"relative"** using an **"auto we insure,"**

2. any person using, or any person or organization legally responsible for the use of, an **"owned auto we insure."** This use must be with **"your"** permission unless the use is by a **"relative;"** and

3. any person or organization legally responsible for the use, by **"you"** or a **"relative,"** of any **"nonowned auto."** This protection applies only if the person or organization does not own or hire the vehicle being used.

(boldface in original)*.* The policy elsewhere defined "you" and "your" as referring to the named insured identified in the declarations page of the policy. The policy defined the term "relative" to include a resident of the household related to the named insured by blood, marriage or adoption.

*The Accident*

On the afternoon of February 11, 2008, Karen Dwyer had fallen ill when it was time to pick up two of her children from school. Instead of going to the school for the children as she usually did, she gave Mr. Abdulkhalek the keys to the Subaru and asked him to retrieve the children – a two-minute drive from the home. According to Mr. Abdulkhalek, he then drove to a gas station on Route 202 before heading to the school. The record does not reveal the reason for Mr. Abdulkhalek's trip to the gas station. According to Mr. Abdulkhalek, after stopping at the gas station, he made a U-turn on Route 202 and, as he

4

approached a stoplight, collided with a car occupied by Petitioners David and Claudia Payne. Had he driven straight to the school, he would not have been on Route 202.

### *The Litigation*

In October 2010, the Paynes filed a tort action against Mr. Abdulkhalek, the Dwyers, and the Paynes' own automobile insurer, GEICO General Insurance (with respect to uninsured/underinsured motorist benefits). Case No. CAL 10-34352 (Prince George's County Circuit Court). A question arose as to whether any liability of Mr. Abdulkhalek was covered by the Erie insurance policy relating to the Subaru. On November 23, 2011, the Paynes filed in the Circuit Court for Prince George's County a complaint for declaratory judgment naming the Dwyers, Mr. Abdulkhalek, Erie, and GEICO as defendants and seeking a determination as to whether coverage was afforded to Mr. Abdulkhalek by the Erie policy in connection with the accident. Case No. CAL 11-34091 (Prince George's County Circuit Court). The complaint expressly invited the court to resolve the declaratory judgment action on cross motions for summary judgment. The tort action was stayed pending resolution of the insurance coverage question in the declaratory judgment action.

The Paynes and Erie filed cross-motions for summary judgment in the declaratory judgment action. After a hearing, the Circuit Court determined that Mr. Abdulkhalek's use of the vehicle was not covered under the omnibus clause of the policy. Based on that conclusion, the court granted Erie's motion for summary judgment, and denied the Paynes' motion for summary judgment.

The Paynes appealed, and the Court of Special Appeals affirmed. 216 Md. App. 39, 84 A.3d 212 (2014). The Court concluded that "the coverage of the policy did not extend to [Mr.] Abdulkhalek, the ostensible second permittee, who was expressly prohibited from driving the [Subaru], who nonetheless did so without the necessary presence of the first permittee, and who in any event exceeded the scope of any even implicitly permitted use." *Id*. at 58, 84 A.3d at 223. The Paynes filed a petition for a writ of *certiorari*, which this Court granted.

## II

## Discussion

### *Standard of Review*

The Circuit Court decided this case on cross motions for summary judgment. Under the Maryland Rules, a circuit court may grant a motion for summary judgment if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Maryland Rule 2-501(f). The court is to consider the record in the light most favorable to the non-moving party and consider any reasonable inferences that may be drawn from the undisputed facts against the moving party. *Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 598, 80 A.3d 269 (2013). When parties file cross motions for summary judgment, the court must assess each motion on its own merits. *MAMSI Life & Health Ins. Co. V. Callaway*, 375 Md. 261, 278, 825 A.2d 995 (2003). Although the court is considering the same record, it might draw different inferences from the same basic facts in considering the

6

opposing motions. It is, of course, possible that a court would deny both motions in light of the different inferences drawn from the same facts. In other words, the resolution of cross motions for summary judgment is not a zero sum game. Both combatants may remain standing.

Because a circuit court's decision to award summary judgment turns on a question of law, not a dispute of fact, an appellate court is to review whether the circuit court was legally correct without according any special deference to the lower court's legal conclusions. *Mathews,* 433 Md. at 598. We thus consider the legal question at issue anew – or, in the Latin phrase, *de novo*.

### *Whether this Case can be Decided on Summary Judgment*

In this case the basic facts are undisputed and the legal question at issue in this declaratory judgment action may be susceptible to resolution on summary judgment, unless contrary inferences drawn from those facts would require denial of both motions for summary judgment.

It is clear that Karen Dwyer's use of the Subaru would be covered under the omnibus clause as she was both a relative resident in the household of the named insured and also had general unrestricted permission from the named insured – her father – to use the vehicle. But Mr. Abdulkhalek was neither a named insured in the Erie policy nor a "relative," as defined in that policy. Thus, he would only be covered under the policy if he came within the

7

permissive use provision of the omnibus clause. Erie asserts that Mr. Abdulkhalek is not covered under the permissive use provision for two reasons.[3]

First, it argues that an individual who is otherwise forbidden from driving an insured vehicle is only covered by the permissive use provision as a second permittee when the first permittee – Karen Dwyer, in this case – is physically in the vehicle at the time of the accident. There is no dispute that Ms. Dwyer was not in the vehicle when it collided with the Paynes' car.

Second, even if there could be coverage of a second permittee without the presence of the first permittee in the vehicle, Erie argues that a second permittee must be driving the car for the benefit of the first permittee and that, in this case, Mr. Abdulkhalek's trip to the gas station that resulted in his driving the car to the scene of the accident on Route 202 was not for the benefit of the first permittee. Accordingly, even if Karen Dwyer could bring Mr. Abdulkhalek within the scope of the omnibus clause as a second permittee by authorizing him to drive the car for her benefit, there was no coverage for his deviation from the task that she had assigned him.

.       Thus, one of the two bases that Erie offers for summary judgment in its favor turns on a basic fact about which there is no disagreement – whether Karen Dwyer was in the car at the time of the accident. The second reason turns more on what inferences may be drawn

[3]Alan and Maureen Dwyer adopt Erie's view in their brief.

8

from the undisputed facts – whether Mr. Abdulkhalek was operating the car for the benefit of Ms. Dwyer at the time of the accident.

***The Criteria for Coverage as a Second Permittee under the Omnibus Clause***

Prior appellate decisions have identified alternative scenarios under which an omnibus clause covers the operation of the vehicle when a named insured authorizes another individual – the "first permittee" – to use the car, but forbids or limits the operation of the car by others.  While the reported decisions in which courts have found coverage have involved factual situations in which the first permittee was physically present in the car at the time of the accident, the test articulated in those decisions does not require the presence of the first permittee.  Rather, the courts have stated a test in the disjunctive which requires either that the first permittee be in the car while it is being operated by the second permittee *or* that the second permittee drive the car with the authorization of the first permittee for the first permittee's benefit.  Three of the leading decisions state this disjunctive test as follows:

(1)  *Kornke*

> [Even if the named insured expressly prohibited a second permittee from use of the automobile] the law permits coverage [under the omnibus clause] because a) the original permittee was riding in the car with the second permittee at the time of the accident; **or** b) because the second permittee was serving some purpose or advantage of the first permittee when the accident occurred.

*Maryland Indemnity Ins. Co. v. Kornke*, 21 Md. App. 178, 196-97, 319 A.2d 603 (1974)

(emphasis added) (citations omitted).[4]

(2)  *Federal Insurance Co.*

> The "general rule" that a permittee may not allow a third party
> to "use" the named insured's car has generally been held not to
> preclude recovery under the omnibus clause where (1) the
> original permittee is riding in the car with the second permittee
> at the time of the accident, **or** (2) the second permittee, in using
> the vehicle, is serving some purpose of the original permittee.

*Federal Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 471, 341 A.2d 399 (1975) (quoting 7 Am.

Jur.2d, Automobile Insurance, §117 (1963)) (emphasis added).[5]

(3) *Bond*

> [There are] two variations from the general rule denying
> coverage to the second permittee where the named insured
> expressly prohibited the first permittee from allowing others to
> drive the car.  They are, one, where the first permittee was riding
> in the car, **or** was benefitted by its operation, and two, where the

---

[4]In *Kornke*, the named insured gave his teenage son permission to drive the car, but forbade its use by others.  When the car developed an electrical problem during one trip, the son repaired the problem but suffered an electrical shock, asked one of his passengers to take over the wheel, and an accident ensued.  The court found that the insurance policy extended coverage to the driver as a second permittee under both tests set forth in the passage quoted in the text.  21 Md. App. at 197.

[5]In *Federal Insurance*, the named insured – an automobile delivery company – had contracted with the first permittee to drive a car from New York to Florida.  The first permittee had recruited a couple friends to accompany him and one of the passengers took a turn driving the car part way through the trip, during which there was an accident. Applying the two tests quoted in the text, this Court held that the friend was covered as a second permittee because, not only was the first permittee in the car at the time of the accident, but in taking a turn driving, the friend was also serving the purposes of both the named insured and the first permittee.  275 Md. at 472.

> second permittee's driving was occasioned by an emergency or a situation involving elements of urgency or necessity, benefitting the first permittee. Neither of these variations are applicable here, and we have in this case no occasion to consider their viability[.]

*Bond v. Pennsylvania National Mutual Casualty Ins. Co.*, 289 Md. 379, 386 n.1, 424 A.2d 765 (1981) (emphasis added).[6]

In each of the cases, the court recognized two alternative situations in which coverage would extend to operation of the car by a person other than the first permittee – one where the first permittee is a passenger, though not driving the car, and a second in which the driver is operating the car for the benefit of the first permittee, even though the first permittee is not physically present in the car. *See also Nationwide General Ins. Co. v. GEICO*, 81 Md. App. 104, 115, 566 A.2d 1117 (1989), *cert. denied*, 319 Md. 72, 570 A.2d 864 (1990) (noting that *Kornke* and *Bond* alluded to *two* tests for coverage of a "second permittee" under the omnibus clause, only one of which involves the presence of the first permittee).

The rationale for this disjunctive test would appear to be as follows. An omnibus clause that contemplates that the named insured may authorize the "use" of the vehicle by

---

[6]In *Bond*, the named insured allowed her daughter, the first permittee, exclusive use of the car. On the day of the accident, the daughter picked up two friends to go to a dance in Essex. En route to the dance, they stopped at a bar, and the daughter left the car with her friends while she went off with a boyfriend. One of her friends then drove the car to a nearby carnival and was involved in an accident on the return trip. This Court held that the circuit court properly found that the car was not being used by anyone expressly or impliedly authorized to drive it at the time of the accident. In a footnote, the Court noted that the friend's operation of the car was not covered by the omnibus clause under *any* of the criteria in the passage quoted in text above. 289 Md. at 386 n.1.

11

a first permittee extends coverage to a second permittee only if the use of the car is consistent with the scope of permission granted to the first permittee.[7] The presence of the first permittee in the car at the time it is operated by another driver is an indication that it is being operated for the benefit of the first permittee – *i.e.*, used by the first permittee, even if driven by someone else. One case has alluded to the notion that the first permittee remains the "master of the ship"[8] even if the first permittee is not operating the car. However, there does not appear to be any requirement that the first permittee be actively directing the operation of the car – in *Kronke*, the first permittee was asleep in the car at the time of the accident. If the first permittee is not physically present in the car, it must be clear that the driver is operating the vehicle for the benefit of the first permittee – within the scope of the first permittee's authorized use of the car – in order to have coverage as a second permittee.[9]

---

[7]It has long been held that permission to "use" a vehicle encompasses more than permission to drive it oneself. *See Hardware Mutual Casualty Co. v. Mitnick*, 100 Md. 604, 607, 26 A.2d 393 (1942) ("use" in an omnibus clause includes "making use of it by riding while driven by another"); *Melvin v. American Automobile Insurance Co.*, 232 Md. 476, 478-79, 194 A.2d 269 (1963) ("actual use" not limited to operation of vehicle "where the operator is the agent or servant of another and subject to his immediate and present direction and control"). When the named insured grants permission to the first permittee for a limited purpose, the same limitations also constrain the use of the vehicle by a second permittee. *See Liberty Mutual Ins. Co. v. Maryland Automobile Insurance Fund*, 154 Md. App. 604, 616, 841 A.2d 46 (2004) (when named insured allowed his son – the first permittee – to use insured vehicle for the purpose of transporting his mother, omnibus clause did not extend coverage to a friend whom the son allowed to drive the car during a detour that the two took to Washington, D.C., without the mother).

[8]*Mitnick*, 180 Md. at 607.

[9]The concurring opinion expresses a concern that, absent a requirement that the first
(continued...)

Erie argues that the two tests should be combined and considered as conjunctive rather than disjunctive. Erie would rewrite each of the passages quoted above to replace the word "or" in each instance with the word "and." But a little word can make a big difference. Under Erie's position, an innocent injured third party would have no recourse against the insurance policy that covered the car that caused the accident, even if the driver was driving the car at the request of, and for the benefit of, an authorized user of the vehicle. Rather, the innocent injured party would have to seek compensation from the driver alone, whatever uninsured motorist benefits the injured party might happen to have, or the uninsured component of the Maryland Automobile Insurance Fund. In our view, this is at odds with the public policy underlying the compulsory insurance law and with the consistent interpretation of omnibus clauses such as the one in the Erie policy.[10]

---

[9](...continued)
permittee be present in the car, there will be a "slippery slope" leading to coverage of "third, fourth, or even fifth permittees." Concurring slip op. at pp. 18-19 & n.4. It is true that, under the second alternative of the *Kornke/Federal Insurance/Bond* formulation, there is the potential that different individuals could drive the vehicle at the direction of the first permittee, but in order to have coverage under the omnibus clause, each such driver would have to be operating the vehicle for the benefit of the first permittee – the individual whose "use" of the vehicle was authorized by the named insured. Each such driver would thus be another second permittee – just as there may be multiple individuals who could drive the vehicle at the direction of the first permittee with the first permittee in the car. In both cases, the driver is a second permittee covered by the omnibus clause. The imagined "third, fourth or fifth permittee" is simply an alternative second permittee, as there is only one driver at any particular time. There is no "slippery slope."

[10]The Court of Special Appeals adopted Erie's position as one of its alternative reasons for affirming summary judgment in Erie's favor. The court's scholarly opinion draws an analogy to a classic double play combination of the Chicago Cubs, in which a

(continued...)

***Application to Mr. Abdulkhalek's Trip***

The omnibus clause in the Erie policy contemplates that the named insured may authorize the "use" of the vehicle by others. The undisputed facts are that Mr. Dwyer had granted Karen Dwyer – the first permittee – unrestricted use of the Subaru. Indeed, as a relative of the named insured who lived in his household, Karen Dwyer was covered under the omnibus clause in the Erie policy even without Mr. Dwyer's explicit permission. Thus, there is no question that it was within the scope of Karen Dwyer's permitted use of the car to use it to pick up her children from school.

On the day of the accident, Karen Dwyer asked Mr. Abdulkhalek to pick up two of their children from an elementary school two blocks from the Dwyer house. Mr. Abdulkhalek, however, went elsewhere – to a gas station that led him to the intersection where he collided with the Paynes' car. On this record, the purpose of the trip to the gas station is a bit of a mystery, but there is no indication that it was for the benefit of Karen Dwyer. One cannot say that, on the basis of the undisputed facts, there was coverage of Mr.

---

[10](...continued)
baseball passed from shortstop Joe Tinker to second baseman Johnny Evers to first baseman Frank Chance to complete a double play. 216 Md. App. at 40-41. In other words, much as the baseball had to physically end up with Chance for the batter to be called out, in the view of the Court of Special Appeals there would be no insurance coverage for a second permittee under an omnibus clause unless the first permittee is physically in the car while it is driven by the second permittee. Under our opinion, a more apt analogy in this case might be the infield fly rule, under which there would be no need for Tinker – or Evers – to get the ball to Chance to have the batter called out. Nor is there any need to belabor the analogy. More information on the infield fly rule can be found at Note, *The Common Law Origins of the Infield Fly Rule*, 123 U. Penn. L. Rev. 1474 (1975).

14

Abdulkhalek under the omnibus clause as a matter of law. The Circuit Court was clearly correct in its decision to deny the Paynes' motion for summary judgment

As noted above, the fact that the Paynes' motion for summary judgment fails does not necessarily mean that Erie's opposing motion for summary judgment succeeds. In assessing the Paynes' motion, we indulged all reasonable inferences in favor of Erie. One might reasonably infer that a trip to a gas station is inconsistent with carrying out a request to take a two-block trip to an elementary school to pick up children. But in assessing Erie's motion, the winds blow in the opposite direction and all inferences are to be taken in favor of the Paynes.[11] Nevertheless, the inferences must be reasonable and not simply speculation.

Although Mr. Abdulkhalek potentially had coverage under the omnibus clause as a second permittee, he did not have the same discretion as Karen Dwyer, the first permittee, to use the car as he pleased. In her absence, he was covered only to the extent that he drove for her benefit. In the end, what we know from this record is that Mr. Abdulkhalek was asked to drive to the elementary school for the benefit of Karen Dwyer, the first permittee (there is no suggestion in the record before us that she sent him on any other errand); that he drove to a gas station instead of the elementary school; and that he was in an accident shortly after he left the gas station. We might speculate that he went to the gas station to benefit Ms. Dwyer; that even if it was not for the benefit of Ms. Dwyer, he had returned to that purpose

---

[11]Cross motions for summary judgment may be contrasted to a bench trial, such as occurred in *Liberty Mutual Ins. Co. v. Maryland Automobile Insurance Fund*, 154 Md. App. at 608, in which a circuit court may make factual findings and need not indulge inferences in favor of one party or the other.

when the accident intervened; or that the apparently circuitous route he was taking to the school was the best he knew.  The problem is that we cannot root any of these musings in the record before us.  They do not qualify as reasonable inferences that allow the Paynes to escape summary judgment.  We thus agree with the second alternative holding of the Court of Special Appeals that this deviation from his assigned task took Mr. Abdulkhalek outside the coverage of the omnibus clause.  *See* 216 Md. App. at 54-58.

## III

### Conclusion

An omnibus clause in an automobile insurance policy that extends liability coverage to a permissive user of an insured vehicle also encompasses a driver who operates the vehicle for the benefit of an individual who has permission from the named insured to use the car.  Coverage does not extend to that driver if, as in this case, the driver deviates from the purpose for which he was authorized to drive the car for the benefit of first permittee.  We thus hold that the Circuit Court properly granted summary judgment in favor of Erie.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.  COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Prince George's County
Case No. CAL11-34091

Argued: January 12, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 38

September Term, 2014

_____

DAVID PAYNE, ET UX.

v.

ERIE INSURANCE EXCHANGE, ET AL.

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Concurring Opinion by Watts, J., which Harrell
and Battaglia, JJ., join

_____

Filed: March 30, 2015

Respectfully, I concur in the judgment only.[1] I would hold that, where a named insured has expressly prohibited a second permittee from driving a vehicle, coverage under an omnibus clause may extend to the second permittee only if, at the time of the accident: (1) the first permittee is in the vehicle; (2) the second permittee is using the vehicle for some purpose or benefit of the first permittee; and (3) the use of the vehicle is within the scope of permission for use that the named insured granted.

After a thorough review of the relevant case law, I am convinced that Maryland precedent firmly establishes that coverage under an omnibus clause of an automobile liability insurance policy does not extend to a second permittee who is expressly forbidden from driving the insured vehicle and who gets into an accident when the first permittee is not in the vehicle.

In Md. Indem. Ins. Co. v. Kornke, 21 Md. App. 178, 179, 193, 197, 319 A.2d 603, 604, 612, 614 (1974), the Court of Special Appeals held that coverage under an omnibus clause of an automobile liability insurance policy extended to a second permittee where the named insured of the vehicle had restricted use of the vehicle to a first permittee, but the first permittee was in the vehicle at the time of the accident. That Court described omnibus clauses as follows:

> The so-called 'omnibus clause,' required by statute in a number of states, is in addition to the general insuring clause and extends the protection of the automobile liability insurance policy to any person using the insured vehicle provided the use (or 'actual use') is by the named insured or with his permission or consent. The clause, irrespective of language variations,

---

[1] I fully join the Majority's conclusion that Ameen R. Abdulkhalek is not covered under the insurance policy because he was not using the vehicle for the first permittee's benefit at the time of the accident. See Maj. Slip Op. at 15-16.

clothes the named insured with broad authority to constitute other persons as 'additional insureds.'

Id. at 180, 319 A.2d at 604-05 (footnotes omitted).

In Kornke, id. at 181-82, 319 A.2d at 605, Kornke, the named insured, gave his teenage son permission to drive the car for purposes of going to school and work, and the son drove the car "almost every day" for those purposes. The son was "under explicit instructions not to allow anyone else to drive the [] car." Id. at 182, 319 A.2d at 606. One day, with his father's permission, the son drove the car, with three of his friends, to a farm. Id. at 182, 319 A.2d at 606. On the way to the farm, the car experienced an electrical problem, and the son stopped the car and received an electric shock while fixing the problem, causing his right arm to temporarily go numb. Id. at 182, 319 A.2d at 606. One of the son's friends then took over driving, with the son as a passenger in the car, and an accident occurred. Id. at 183, 319 A.2d at 606. The Court of Special Appeals indicated that the question for decision was whether the car was being used with the father's permission given the father's "express prohibition . . . against allowing anyone else to drive." Id. at 183-84, 319 A.2d at 606-07.

That Court began by observing that the policy's omnibus clause extended coverage to "any person while using the automobile and any person or organization legally responsible for the use thereof, provided the **actual use** of the automobile is by the named insured or such spouse or with the permission of either." Id. at 180-81, 319 A.2d at 605 (emphasis added). For guidance, the Court of Special Appeals relied on Hardware Mut. Cas. v. Mitnick, 180 Md. 604, 26 A.2d 393 (1942) and Melvin v. Am. Auto. Ins. Co., 232

- 2 -

Md. 476, 194 A.2d 269 (1963), "neither of which . . . involved the question of coverage vel non of a second permittee." Kornke, 21 Md. App. at 184, 319 A.2d at 607.[2] After reviewing Mitnick, Melvin, and other relevant authorities, the Court of Special Appeals reached the following six conclusions concerning construction of omnibus clauses:

1) Where coverage is extended by the omnibus clause only to persons using the vehicle with the permission of the named insured (or other designated person) coverage depends upon the scope of the permission granted.

2) In determining whether the scope of permission has been exceeded, Maryland has not adopted the strict rule, the liberal rule, or the minor deviation rule.  However, Melvin supports by implication the minor deviation rule.

3) 'Actual' use with the permission of the named insured is 'the particular use contemplated when permission is granted and relied on.'

4) Such use and the operation of the car at the time of accident are not 'synonymous,' for using a car by a borrower includes riding in it while another drives, at least where the former remains 'the custodian of the

---

[2]In Mitnick, 180 Md. at 605-07, 26 A.2d at 393-94, the first permittee was a passenger in the vehicle at the time of the accident, and the omnibus clause extended coverage to any person using the vehicle provided "the actual use is with the permission of the named insured[,]" and we held that "using" a vehicle includes riding in it while another drives.  We explained: "[U]sing a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another.  [The first permittee] was still the director of the enterprise, still the custodian of the instrumentality confided to [her] keeping, still the master of the ship." Id. at 607, 26 A.2d at 394 (citations and internal quotation marks omitted) (last alteration in original).

Similarly, in Melvin, 232 Md. at 477-79, 194 A.2d at 270-71, the first permittee was a passenger in the vehicle at the time of the accident, and the omnibus clause provided coverage to individuals using the vehicle "provided the actual use thereof is with the permission of the named insured[,]" and we stated: "We see no reason to limit the meaning of the words 'actual use' to the operation of a vehicle, where the operator is the agent or servant of another and subject to his immediate and present direction and control."

Significantly, in both Mitnick and Melvin, in holding that "use" includes riding while another drives, key to our decisions was that the first permittees were in the vehicles at the time of the accidents; the first permittees were still the masters of the ship, and the second permittees were subject to the first permittees' immediate direction and control.

instrumentality confided to his keeping,' or the latter 'is the agent or servant of another and subject to his immediate and present direction and control.'

5) There is no case in Maryland squarely addressing the issue of whether a restriction upon the operation of the car, i.e., a prohibition against permitting a third person to drive it, is not a factor in determining whether the operation of the car is in accordance with the particular use contemplated when permission was granted and relied on.

6) Nevertheless, the thrust of Maryland decisions is that in determining whether the operation is within the permission required by the omnibus clause 'one must examine the total facts,' and the facts of paramount significance respecting a clause for permitted use (as against permitted operation) do not pertain to the identity of the driver but to whether at the time of the accident the operation of the car was for a purpose germane to the permission granted, whether it was for the convenience of the named insured or the first permittee, and whether the latter was present in the car at the time of the accident.

Kornke, 21 Md. App. at 191-92, 319 A.2d at 611.  The Court of Special Appeals observed

that the sixth conclusion was "in accord with the large majority of cases cited by the Court

of Appeals in *Mitnick* and *Melvin*[.]"  Id. at 192-93, 319 A.2d at 611 (italics added).

Based on these conclusions, the Court of Special Appeals held:

[T]he total facts in this case support a finding that [the son] was still 'using' his father's car, even though [the son's friend] was driving the car at the time of the accident, and that the 'actual use' was with the permission of [the father].  Certainly, at the time of the accident, the operation of the car by the second permittee was for a purpose germane to the permission granted by father to son; it was, at the very least, for the convenience of the first permittee (if not, indeed, a matter of necessity in the light of the son's testimony), and, of course, the first permittee was present in the car at the time of the accident.

Id. at 193, 319 A.2d at 612.  As to the circumstance that the father had prohibited the

operation of the car by any person other than his son, the Court of Special Appeals

concluded that such a prohibition did not preclude extending coverage to the son's friend

- 4 -

under the omnibus clause.  Id. at 194, 319 A.2d at 612.  That Court explained:

> [A] distinction is validly made between situations where the law denies coverage under the omnibus clause because the named insured expressly prohibited the use of the automobile by any person other than his permittee and a second permittee had used the car solely for his own benefit; and, on the contrary, where the law permits coverage because a) the original permittee was riding in the car with the second permittee at the time of the accident; or b) because the second permittee was serving some purpose or advantage of the first permittee when the accident occurred.
>
> Without being required to choose between the 'liberal rule' and the moderate or 'minor deviation' rule, [] we hold that as both of the above tests were satisfied in the instant case, then upon either rule the Kornke automobile was being used within the scope of the permission granted by the named insured when the accident occurred, and that, therefore, [the son's friend] was an insured under the omnibus clause of the . . . policy issued to [the father].

Id. at 196-97, 319 A.2d at 613-14 (citations and some paragraph breaks omitted).

A year after Kornke, in Fed. Ins. Co. v. Allstate Ins. Co., 275 Md. 460, 472, 341 A.2d 399, 406-07 (1975), this Court held that coverage under an omnibus clause of an automobile liability insurance policy extended to a second permittee where the first permittee was in the vehicle at the time of the accident.  In that case, Direct Way Auto Shippers, a company that delivered vehicles for its customers from New York to Florida, hired a driver, Frank, to deliver a vehicle to Florida.  Id. at 463-64, 341 A.2d at 402.  Despite Direct Way not having granted Frank permission to have other drivers or passengers on the trip, Frank took his girlfriend and another friend, Straz, on the trip.  Id. at 464, 341 A.2d at 403.  Straz was driving the vehicle when an accident occurred in Maryland.  Id. at 464-65, 341 A.2d at 403.

We observed that the critical question was whether Frank and Straz were insured

- 5 -

under Direct Way's insurance policy with Allstate.  Id. at 470, 341 A.2d at 405.  We held

that Frank was covered under the Allstate insurance policy, explaining:

> Since Frank, the first permittee of Direct Way, was in the car while
> enroute to Florida at the time of the accident, it was still being used for the
> purpose for which it was given to Frank.  Because Frank was the 'custodian
> of the instrumentality confided' to him, it is clear under the Maryland cases
> that he was using the automobile.  Accordingly, Frank is an insured under
> the Allstate policy.

Id. at 470-71, 341 A.2d at 406.  As to Straz, we observed that, given the language of the

Allstate insurance policy, he would be covered as a second permittee "only if he was using

the automobile with the implied permission of Direct Way."  Id. at 471, 341 A.2d at 406.

To that end, we stated:

> The 'general rule' that a permittee may not allow a third party to 'use' the
> named insured's car has generally been held not to preclude recovery under
> the omnibus clause where (1) the original permittee is riding in the car with
> the second permittee at the time of the accident, or (2) the second permittee,
> in using the vehicle, is serving some purpose of the original permittee.

Id. at 471, 341 A.2d at 406 (quoting 7 Am. Jur. 2d, Automobile Insurance, § 117 (1963)).

Thus, we held that Straz was covered under the Allstate insurance policy as a second

permittee, explaining:

> [T]here was implied permission from Direct Way to Frank to subdelegate the
> driving to Straz, in light of these facts: the first permittee (Frank) was a
> passenger in the car and had control and direction of the car; subdelegation
> of permission to drive was not specifically forbidden; the second permittee
> (Straz) was serving some purpose of Frank; and both Straz and Frank, by
> driving the [] vehicle to Florida, were serving a purpose of the named insured
> (Direct Way).  Consequently, Straz is also an insured under the omnibus
> clause of the Allstate policy.

Id. at 472, 341 A.2d at 406-07.

In Bond v. Pa. Nat'l Mut. Cas. Ins. Co., 289 Md. 379, 385-86, 382, 424 A.2d 765,

768-69, 767 (1981), we held that coverage under an omnibus clause of an automobile liability insurance policy did not extend to a second permittee where the named insured had expressly prohibited the first permittee from allowing the second permittee to drive the car and the first permittee was not in the car at the time of the accident. The named insured permitted her daughter to "enjoy near exclusive use of the" car, but expressly instructed the daughter not to allow anyone else, including the daughter's friend, to drive the car. Id. at 382-83, 424 A.2d at 767. The car was insured under a policy that provided coverage to the "insured," which included "any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission." Id. at 381, 424 A.2d at 766. One day, the daughter permitted her friend to drive the car, and an accident occurred. Id. at 382, 424 A.2d at 767.

We stated "that the principal focus of our inquiry [was] on the relationship between the named insured (the mother) and the first permittee ([the daughter]) and not . . . between the first and second permittees." Id. at 385, 424 A.2d at 768. We held that the daughter's friend was not covered under the insurance policy, and explained:

> [O]nce the trier of fact determined . . . that the named insured "had specifically restricted her daughter [] from allowing anybody, including [the daughter's friend], to drive the car," and that this express ban was operative when the accident occurred, there is no escape from [the trial court]'s further conclusion that "you cannot imply something in face of an express statement to the contrary." This is so because implied permission arises from the use of circumstantial evidence showing a course of conduct indicative of mutual acquiescence or a lack of objection signifying permission and, thus, it flows by inference to fill the void created by the absence of an express statement. But when an uncountermanded express statement exists, there is no vacuum to be filled. The vast majority of our sister jurisdictions considering the

- 7 -

matter have reached a decision which is in accord with the view we express.

Id. at 385-86, 424 A.2d at 768-69 (citations and footnote omitted). We added, however:

[There are] two variations from the general rule denying coverage to the second permittee where the named insured expressly prohibited the first permittee from allowing others to drive the car. They are, one, where the first permittee was riding in the car, or was benefited by its operation, and two, where the second permittee's driving was occasioned by an emergency or a situation involving elements of urgency or necessity, benefiting the first permittee. Neither of these variations are applicable here, and we have in this case no occasion to consider their viability[.]

Id. at 386 n.1, 424 A.2d at 769 n.1.

Eight years later, in Nationwide Gen. Ins. Co. v. Gov't Emps. Ins. Co., 81 Md. App. 104, 107, 566 A.2d 1117, 1118 (1989), cert. denied, 319 Md. 72, 570 A.2d 864 (1990), the Court of Special Appeals held that a second permittee was covered under the omnibus clause of an automobile liability insurance policy because the second permittee was a permitted user of the vehicle, the actual use of the vehicle was within the scope of that permission, and, significantly, the first permittee was in the vehicle at the time of the accident. The named insured allowed his daughter to use the vehicle for transportation to and from school, and expressly instructed the daughter that nobody else, including her boyfriend, was allowed to drive the vehicle. Id. at 106, 108, 566 A.2d at 1118. The omnibus clause provided to coverage to the named insured; his or her relatives; "any other person using the auto with [the named insured's] permission" provided that "[t]he actual use [was] within the scope of that permission"; and "any other person . . . for his . . . liability because of acts or omissions of an insured under" the other categories of coverage. Id. at 108, 566 A.2d at 1119 (emphasis omitted). One day, on the way to school, the daughter's

- 8 -

boyfriend drove the car, in which the daughter was a passenger, and an accident occurred. Id. at 106, 566 A.2d at 1118.

In evaluating the case, the Court of Special Appeals distinguished Bond, noting that: (1) "[u]nlike *Kornke* and the instant case, the first permittee was not present in the automobile when the *Bond* accident occurred"; and (2) "[t]he omnibus clause at issue in *Bond* contained language which limited the 'actual operation' to the scope of such permission." Nationwide, 81 Md. App. at 113-14, 566 A.2d at 1121-22. The first distinction was critical to that Court's holding, as it explained:

> [T]he instant case falls within the first proposed exception alluded to in *Bond*, and meets the *Kornke* "tests" since [the daughter], the first permittee, was in the car with [the second permittee, her boyfriend] and was benefitted by its operation. . . . Further, the present case is factually quite similar to *Kornke* and unlike *Bond* since the first permittee accompanied the second permittee.

Nationwide, id. at 115, 566 A.2d at 1122. The Court of Special Appeals observed that its holding was in accord with other jurisdictions, explaining that "the broad view is that[,] even where the first permittee is expressly prohibited from allowing[] others to drive[,] coverage ordinarily extends to a second permittee if the first permittee is a passenger in the vehicle at the time of the accident." Id. at 117, 566 A.2d at 1123 (citation omitted). At the conclusion of the opinion, the Court of Special Appeals stated: "[T]his case, like *Kornke*, fits the first exception alluded to in *Bond* since the first permittee was both present and benefitted by the second permittee's driving." Id. at 123, 566 A.2d at 1126.

More recently, in Liberty Mut. Ins. Co. v. Md. Auto. Ins. Fund, 154 Md. App. 604, 610, 616, 841 A.2d 46, 49, 53 (2004), the Court of Special Appeals held that a second permittee was not covered under the omnibus clause of an automobile liability insurance

policy even though the first permittee was in the vehicle at the time of the accident because, at the time of the accident, the second permittee was not operating the vehicle within the scope of permission that the named insured granted. The automobile liability insurance policy defined "insured" as "[y]ou and any person while using a covered automobile with your permission" and "[a]ny person . . . legally responsible for the use of a covered automobile provided its actual use is by you or with your permission." Id. at 610, 841 A.2d at 49. One day, the named insured instructed his son to use the car to take his mother to work and then bring the car back. Id. at 607, 841 A.2d at 48. After leaving the named insured's house with the car, the son picked up his friend and his mother, and the son dropped off his mother at work. Id. at 607-08, 841 A.2d at 48. After dropping off his mother, the son and his friend decided to visit the friend's cousin in Washington, D.C.; because the son was not familiar with the area, he let his friend drive. Id. at 608, 841 A.2d at 48. While driving the vehicle, the friend struck a parked car, which was propelled into a pedestrian. Id. at 608, 841 A.2d at 48.

The Court of Special Appeals observed that there was "ample evidence" that the father and son had a "mutual understanding" that only the son would drive the car. Id. at 611, 841 A.2d at 50. Accordingly, the Court of Special Appeals held:

> Because [the son] was prohibited from allowing others to drive his father's vehicle, and because the vehicle was on the way back from an unauthorized detour when the accident occurred, [the son's friend] was not covered by the [insurance] policy. Moreover, as we shall see, appellant's claim that the [trial] court erroneously relied on *Bond* and not *Kornke* in deciding this case is without merit, as it is *Bond* which is applicable to the instant case and *Kornke* which is distinguishable from it.

Id. at 612-13, 841 A.2d at 51. Relying on Bond, the Court of Special Appeals explained:

"[T]he owner's insurance company is not the primary insurer in instances where the owner of the covered vehicle has not given express or implied permission to the second permittee to drive his car." Id. at 614, 841 A.2d at 52. That Court concluded:

> Even though [the friend] was driving because he reportedly knew the D.C. area better than [the son], the operation of [the named insured]'s car was not "for a purpose germane to the permission granted." There is no dispute that [the son] was given permission to use the car only for the purpose of taking his mother to work. After completing that task, [the son] and [the friend] decided, without consulting [the named insured], to continue on into the District of Columbia to pick up [the friend]'s cousin. Since [the son] was not granted permission to use the car for any other purpose than to take his mother to work, the use of the car at the time of the accident was outside the scope of the permission granted. Therefore, the [trial] court did not err in finding that [the friend] was not covered under the [insurance] policy.

Id. at 616, 841 A.2d at 53 (citation omitted).

After examining the principles and authorities above, I would hold that, where a named insured expressly prohibits a second permittee from driving the vehicle, coverage under an omnibus clause may extend to the second permittee only if, at the time of the accident: (1) the first permittee is in the vehicle; (2) the second permittee is using the vehicle for some purpose or benefit of the first permittee; and (3) use of the vehicle is within the scope of permission for use that the named insured granted. In applying this holding, I would start by identifying the key players and the scope of permission. Dwyer was the named insured. Karen was the first permittee, as Dwyer permitted Karen to drive and use the Subaru. Abdulkhalek was the second permittee, as Karen gave him the keys to the Subaru and tasked him with picking up their children from school. As to the scope of permission between the named insured and the first permittee, see Bond, 289 Md. at 385, 424 A.2d at 768 ("[T]he principal focus . . . i[s] on the relationship between the named

- 11 -

insured . . . and the first permittee . . . and not . . . between the first and second permittees."), the record demonstrates that Dwyer permitted Karen to drive and use the Subaru without restriction; in other words, Karen's use of the Subaru was not limited to certain purposes or tasks, but rather included use for any purpose, including picking up her children from school. As Abdulkhalek knew, however, Dwyer expressly prohibited him from driving the Subaru; in other words, Dwyer's permission to Karen, although not limited as to purposes or tasks, was restricted in that Abdulkhalek was not permitted to drive the Subaru.

I know of no case in which a Maryland appellate court has extended coverage under an omnibus clause of an automobile liability insurance policy to a second permittee where the second permittee was expressly prohibited by the named insured from driving the vehicle and the first permittee was not in the vehicle at the time of the accident. To the contrary, a review of the case law leads to the exact opposite conclusion—that coverage under an omnibus clause does not extend to a second permittee where the named insured expressly prohibits the first permittee from allowing the second permittee to drive the vehicle and where the first permittee is not in the vehicle at the time of the accident. See Bond, id. at 385-86, 424 A.2d at 768-69. For coverage under an omnibus clause to be extended to a second permittee, the first permittee must be in the vehicle at the time of the accident, and the second permittee must be serving some purpose or benefit of the first permittee. See, e.g., Allstate, 275 Md. at 472, 341 A.2d at 406-07 (We held that coverage extended to the second permittee because, in relevant part, "the first permittee [] was a passenger in the car and had control and direction of the car; [and] the second permittee [] was serving some purpose of" the first permittee); Nationwide, 81 Md. App. at 115, 566

- 12 -

A.2d at 1122 (The Court of Special Appeals held that coverage extended to the second permittee because "the first permittee[] was in the car with [the second permittee] and was benefitted by its operation."); Kornke, 21 Md. App. at 197, 193, 319 A.2d at 614, 612 (The Court of Special Appeals held that coverage extended to the second permittee because, at the time of the accident, the second permittee's driving of the car was, "at the very least, for the convenience of the first permittee . . ., and, of course, the first permittee was present in the car[.]").

Precedent clearly establishes that, for coverage under an omnibus clause to extend to a second permittee, when the second permittee has been expressly forbidden by the named insured from driving the vehicle, the first permittee must be in the vehicle at the time of the accident. Indeed, not only must the first permittee be in the vehicle at the time of the accident, but also, the use of the vehicle itself must be within the scope of permission that the named insured granted. See Liberty, 154 Md. App. at 616, 841 A.2d at 53 ("[T]he operation of [the named insured]'s car was not 'for a purpose germane to the permission granted.' . . . [T]he use of the car at the time of the accident was outside the scope of the permission granted." (Citation omitted)); Kornke, 21 Md. App. at 193, 319 A.2d at 612 ("[A]t the time of the accident, the operation of the car by the second permittee was for a purpose germane to the permission granted by" the named insured).

I would reject Petitioners' contention that there is an exception in Maryland case law providing coverage to a second permittee, even if the first permittee is not in the vehicle at the time of the accident, so long as the second permittee's use of a vehicle serves some purpose of, or benefits, the first permittee. In support of this position, Petitioners seize on

the following language in <u>Kornke</u>, 21 Md. App. at 197, 319 A.2d at 613-14: "**or** b) because the second permittee was serving some purpose or advantage of the first permittee when the accident occurred."   (Emphasis added) (citations and paragraph break omitted). Petitioners theorize that <u>Kornke</u> sets forth an "either/or" test, under which coverage may extend to second permittees either where the first permittee is in the vehicle at the time of the accident or where the first permittee is not in the vehicle but the second permittee is serving some purpose or benefit of the first permittee.  In <u>Kornke</u>, <u>id.</u> at 196-97, 319 A.2d at 613-14, the Court of Special Appeals stated:

> [A] distinction is validly made between situations where the law denies coverage under the omnibus clause because the named insured expressly prohibited the use of the automobile by any person other than his permittee and a second permittee had used the car solely for his own benefit; and, on the contrary, where the law permits coverage because a) the original permittee was riding in the car with the second permittee at the time of the accident; or b) because the second permittee was serving some purpose or advantage of the first permittee when the accident occurred.

(Citations and paragraph break omitted).  That the Court of Special Appeals in <u>Kornke</u> used the word "or," however, is not dispositive given that Court's holding and the long history in both this Court and the Court of Special Appeals of applying the language in <u>Kornke</u> with the word "and."

In <u>Kornke</u>, <u>id.</u> at 192, 319 A.2d at 611, preceding the language set forth above, the Court of Special Appeals stated:

> [T]he thrust of Maryland decisions is that in determining whether the operation is within the permission required by the omnibus clause 'one must examine the total facts,' and the facts of paramount significance respecting a clause for permitted use (as against permitted operation) do not pertain to the identity of the driver but to whether at the time of the accident the operation of the car was for a purpose germane to the permission granted, whether it

- 14 -

was for the convenience of the named insured or the first permittee, **and** whether the latter was present in the car at the time of the accident.

(Emphasis added). Thus, the Court of Special Appeals acknowledged that, based on its review of the relevant authorities, in determining coverage under an omnibus clause, there are three significant factors—(1) whether at the time of the accident operation of the car was for a purpose germane to the permission given; (2) whether the car's operation was for the convenience of the named insured or the first permittee; and (3) whether the first permittee was in the car at the time of the accident. The Court of Special Appeals used the term "and" when describing the factors; thus, all three factors must be satisfied.

Later, when discussing the exception—that, under certain circumstances, coverage may extend to a second permittee where the named insured expressly prohibited anyone other than the first permittee from driving the vehicle—the Court of Special Appeals set forth factors "a" and "b" as described above and concluded:

Without being required to choose between the 'liberal rule' and the moderate or 'minor deviation' rule, [] we hold that as both of the above tests were satisfied in the instant case, then upon either rule the Kornke automobile was being used within the scope of the permission granted by the named insured when the accident occurred, and that, therefore, [the second permittee] was an insured under the omnibus clause of the . . . policy issued to [the named insured].

Id. at 196-97, 319 A.2d at 613-14 (citations and some paragraph breaks omitted). Viewed in context, it is evident that the Court of Special Appeals intended "a" and "b" as being two factors that formed a conjunctive test (or joint requirements) for coverage, and determined that both factors had been satisfied in Kornke because, at the time of the accident, the first permittee was in the vehicle and the second permittee was serving some purpose of, or

- 15 -

benefitted, the first permittee.  In <u>Kornke</u>, the Court of Special Appeals did not resolve the case on the basis of one factor having been satisfied—instead, that Court determined both factors, or requirements, to be satisfied.  The Court of Special Appeals stated that, given that both factors were satisfied, it did not matter (*i.e.*, the Court was not required to resolve) whether the "liberal rule" or the "minor deviation rule"[3] applied in Maryland.  <u>Kornke</u>, 21 Md. App. at 197, 319 A.2d at 614.  In other words, in <u>Kornke</u>, the Court of Special Appeals stated that, if both factors are satisfied—*i.e.*, at the time of the accident, the first permittee is in the vehicle and the second permittee's use of the vehicle is for the benefit or purpose of the first permittee—it does not matter whether Maryland is a "liberal rule" State or a "minor deviation rule" State because, under either rule, coverage would extend to the second permittee.  In <u>Kornke</u>, the first permittee's presence in the vehicle at the time of the accident played a key role not only in satisfying both factors, but also in determining in the first instance that the first permittee was "using" the vehicle, as that term was used in the omnibus clause.

To the extent that Petitioners read <u>Kornke</u> as setting forth two separate tests or "exceptions" instead of two factors that are jointly required, such a reading is inaccurate; and, in any event, such tests would be *dicta*.  It is clear that, in <u>Kornke</u>, 21 Md. App. at 183, 319 A.2d at 606, the first permittee was in the vehicle at the time of the accident.  Thus, under Petitioners' interpretation, <u>Kornke</u>'s providing two alternative means for

---

[3]In <u>Kornke</u>, 21 Md. App. at 188, 319 A.2d at 609, the Court described the "liberal rule" as "whereby it is held that once permission is given, it will extend to any and all uses of the vehicle[,]" and described the "minor deviation rule" as a rule "under which the Courts hold that a slight deviation does not preclude coverage under the omnibus clause."

coverage was not based on the case's facts, which did not involve an absent first permittee; thus, consideration of that circumstance was not necessary to the decision of the Court of Special Appeals.

In post-Kornke case law, it has become abundantly clear that the Court of Special Appeals and this Court view the two circumstances—*i.e.*, that, at the time of the accident, the first permittee is in the vehicle and the second permittee is serving some purpose or benefit of the first permittee—as two factors that must both be satisfied to extend coverage under an omnibus clause to a second permittee. In other words, despite the one-time use of the word "or" in Kornke, the Court of Special Appeals and this Court have always applied the factors as a conjunctive, or two-part, test, and have required both factors to be satisfied. For example, in Allstate, 275 Md. at 471-72, 341 A.2d at 406-07, we employed a conjunctive, or two-part, test, holding that the second permittee was covered as an insured because, among other things, "the first permittee [] was a passenger in the car and had control and direction of the car" and "the second permittee [] was serving some purpose of" the first permittee. (Citation omitted). In other words, we held that coverage under the omnibus clause extended to the second permittee because both factors were satisfied.

And, in Bond, 289 Md. at 386 n.1, 424 A.2d at 769 n.1, although repeating the word "or," we described the two factors as part of one of two possible variations from the general rule, stating:

> [There are] two [possible] variations from the general rule denying coverage to the second permittee where the named insured expressly prohibited the first permittee from allowing others to drive the car. They are, **one, where the first permittee was riding in the car, or was benefited by its operation,** and two, where the second permittee's driving was occasioned

- 17 -

by an emergency or a situation involving elements of urgency or necessity, benefiting the first permittee.

(Emphasis added). Later, in Nationwide, 81 Md. App. at 115, 123, 566 A.2d at 1122, 1126, the Court of Special Appeals harmonized the two factors and used the word "and" when setting forth the factors, stating: "We hold that the instant case falls within the first proposed exception alluded to in *Bond*, and meets the *Kornke* 'tests' since [] the first permittee[] was in the car with [the second permittee] **and** was benefitted by its operation"; and "we hold that this case, like *Kornke*, fits the first exception alluded to in *Bond* since the first permittee was both present **and** benefitted by the second permittee's driving." (Emphasis added). Given Kornke and subsequent case law, I would hold that the first permittee's presence in the vehicle at the time of the accident is a factor that must be satisfied to extend coverage under an omnibus clause to a second permittee.

A close reading of Maryland case law indicates that both this Court and the Court of Special Appeals have always required that the first permittee be in the vehicle at the time of the accident for coverage to extend to a second permittee. This critical circumstance is warranted for common sense reasons. By reading Kornke as the Majority does, see Maj. Slip Op. at 12-13—that Kornke establishes an "either/or" disjunctive test permitting coverage to be extended to a second permittee where, at the time of the accident, the first permittee is not in the vehicle so long as the second permittee is serving some purpose or benefit of the first permittee—going forward, this Court will undoubtedly be faced with situations in which parties seek to extend insurance coverage under an omnibus clause to third, fourth, or even fifth permittees based solely on the assertion that the

- 18 -

permittees were using vehicles for the benefit or purpose of a first permittee.[4]   Under this

scenario, any number of extended permittees could presumably seek coverage.  Rather than

go down a slippery slope, I am convinced that Maryland is best served by maintaining what

years' worth of case law has established—that a first permittee must be in the vehicle at

the time of the accident for coverage to extend to a second permittee.

Nor am I persuaded that Maryland's compulsory motor vehicle insurance scheme

mandates that coverage be extended in situations where a first permittee is not in the vehicle

at the time of the accident.  To be sure,

> Maryland is a compulsory motor vehicle insurance state.  Since the
> enactment of Ch. 73 of the Acts of 1972, effective January 1, 1973, "the
> owner of a motor vehicle registered or required to be registered in Maryland
> must maintain a motor vehicle insurance policy on the vehicle, or self-
> insurance approved by the [Motor Vehicle Administration]."

Montgomery Cnty. v. Distel, 436 Md. 226, 236, 81 A.3d 397, 403 (2013) (citation omitted)

(alteration in original).  The purpose of Maryland's compulsory motor vehicle insurance

scheme is "to provide coverage, or payment, for liability claims."  Id. at 237, 81 A.3d at

403 (citations and footnote omitted).  Omnibus clauses, such as the one in the policy at

issue here, generally "extend[] coverage to a third party who operates the vehicle within

---

[4]A third, fourth, and fifth permittee are those individuals extended permission in sequence from the second permittee; in other words, the second permittee grants permission to a third permittee to drive a vehicle, a third permittee grants permission to a fourth permittee to drive a vehicle, and a fourth permittee grants permission to a fifth permittee to drive a vehicle, and so on.  In short, if the first permittee's presence in the vehicle is not required, there could be a chain of permittees who grant permission to another subsequent permittee such that the first permittee may not even know who is driving the vehicle in the end; in other words, at least theoretically, anyone could use the vehicle for the benefit of the first permittee whether they received authorization directly from the first permittee, or from a second permittee, or a third permittee.

the permission of the named insured." Id. at 249, 81 A.3d at 411 (citation omitted). In

Distel, id. at 249-50, 81 A.3d at 411, we explained:

> The purpose of an omnibus clause is to protect the named insured, the persons within the omnibus clause, and the public generally and its members injured by the negligent operation of the insured automobile on a public highway. . . . [T]he Court of Special Appeals described the objectives served by an omnibus clause, including providing: (1) the injured person a right to proceed against the insurer in cases in which the insurer would not otherwise be liable because the automobile was not driven by the [named] insured; and (2) the additional insured the protection of automobile liability insurance without his having procured such a policy[.]

(Citations and internal quotation marks omitted) (last alteration in original). Although, under Maryland's compulsory motor vehicle insurance scheme, every vehicle is required to be covered by an automobile liability insurance policy, an omnibus clause in a policy is not intended to extend coverage to any and all possible drivers of the insured vehicle. There are recognized limitations to coverage. For example, nothing in Maryland's compulsory motor vehicle insurance scheme mandates the extension of coverage to car thieves or drivers who fall outside the extended coverage of an omnibus clause, such as those drivers who operate the vehicle outside of the scope of permission that the named insured granted. See id. at 250, 81 A.3d at 411 ("A permissive use clause limits the coverage under the omnibus clause to claims that arise while the third party is operating the vehicle within the scope of the permission granted by the named insured." (Citation, footnote, and internal quotation marks omitted)). Obviously, use of a vehicle by a thief would be fall outside the scope of extended coverage of an omnibus clause, as the thief would not be using the vehicle for the benefit of the first permittee, and the thief may or may not be in a vehicle with the first permittee. The point of the comparison is, however, that Maryland's

compulsory motor vehicle insurance scheme—although intended to protect the public—contemplates, and, indeed, anticipates, that there are times in which there will not be insurance coverage; in other words, there is no doubt that there will be certain situations that are not afforded the extended coverage of an omnibus clause. As with other limitations on coverage under an omnibus clause, the requirement that a first permittee be in the vehicle at the time of an accident for coverage to extend to a second permittee is an allowable limitation that is firmly established in Maryland case law.

For the above reasons, respectfully, I concur in the judgment only.

Judge Harrell and Judge Battaglia have authorized me to state that they join in this opinion.